OTTERBOURG, STEINDLER, HOUSTON
   & ROSEN, P.C.
Attorneys for Israel Discount Bank of New York
230 Park Avenue
New York, New York 10169-0075
Jonathan N. Helfat
Melanie L. Cyganowski
Adam C. Silverstein
Tel. No.: (212) 661-9100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In re:                                     :      Chapter 7

     OAK ROCK FINANCIAL, LLC,       :

                                     :      Case No. 8-13-72251 (DTE)

                    Alleged Debtor.    :

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT
OF APPLICATION OF ISRAEL DISCOUNT BANK OF NEW YORK
FOR AN ORDER TO SHOW CAUSE WHY AN ORDER SHOULD NOT BE
ENTERED PURSUANT TO SECTIONS 105(a); 303(f); 303(g); 303(h); AND 721
OF THE BANKRUPTCY CODE; FEDERAL RULES OF BANKRUPTCY
PROCEDURE 2007.1 ; 7065; AND 9006; AND LOCAL RULE 9077-1: (A) APPOINTING
AN INTERIM CHAPTER 7 TRUSTEE; (B) SHORTENING THE DEBTOR'S TIME TO
ANSWER THE PETITION; AND (C) SHORTENING THE TIME FOR A HEARING ON
THE PETITION FOR AN ORDER OF RELIEF; AND
(D) SEEKING LIMITED PROVISIONAL TEMPORARY RELIEF**

ISRAEL DISCOUNT BANK OF NEW YORK ("IDBNY"), a petitioning creditor of Oak Rock Financial LLC (the "Alleged Debtor" or "Oak Rock"), pursuant to a certain Amended and Restated Credit Agreement, dated May 27, 2011, as amended (the "Credit Agreement"), as well as certain other agreements executed in connection therewith (collectively, the "Loan Documents"), by and through its counsel, Otterbourg, Steindler, Houston & Rosen, P.C., respectfully submits this Memorandum of Law in support of its application for entry of an order to show cause, seeking relief (a) pursuant to Sections 105(a), 303(g) and 721 of the Bankruptcy Code and Rule 2001 of the Federal Rules of Bankruptcy Procedure appointing an Interim Trustee, (b) shortening the answer for the Debtor to answer or otherwise respond to the Petition, pursuant to Federal Rules of Bankruptcy Procedure 9006 and 1011 and Local Bankruptcy Rule 9077-1, to a period of ten days from the date of this filing, (c) reducing the time for trial in this Chapter 7 proceeding to a date no more than twenty days from the date of this filing, pursuant to Bankruptcy Code Section 303(h), Federal Rule of Bankruptcy Procedure 9006 and Local Bankruptcy Rule 9077-1, and (d) pursuant to Federal Rule of Civil Procedure 65, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7065, granting certain limited provisional temporary relief.  In support thereof, IDBNY respectfully alleges as follows:

## INTRODUCTION

A little more than a week ago, the recently appointed manager of Oak Rock -- a specialty asset-based lending company based in Bohemia, New York that owes approximately $33 million in principal to IDBNY and another approximately $57 million in principal to four other banks for which IDBNY serves as agent -- admitted that Oak Rock had perpetrated a massive fraud upon its senior secured lenders.  Oak Rock's manager acknowledged that Oak Rock's most recent

borrowing base certificate representing that Oak Rock had $2.5 million of net *availability* under its credit facility was entirely fictitious and that, in fact, Oak Rock was *over-advanced* by more than $47 million. The massive fraud, IDBNY was informed, was perpetrated by Oak Rock's founder, substantial owner and sole "key man" for the past 12 years, John P. Murphy ("Murphy"), who is now nowhere to be found and is the target of a Federal Bureau of Investigation ("FBI") investigation.

By the time IDBNY was informed of the fraud on April 18, Murphy had resigned the previous day and, for reasons unknown, had signed documents purporting to assign sole management of Oak Rock to an insider named Tom Stephens, whose fund, Oasis Capital Management, LLC ("Oasis"), is a minority equity investor in, and loan participant with, Oak Rock and is the person who disclosed the fraud to IDNBY.

Stephens -- although seemingly experienced in business -- admittedly has no experience whatsoever in commercial lending (Oak Rock's line of business). More to the point, since taking over as manager, Stephens has essentially hijacked the company. In his brief (less than two-week) stint as Oak Rock's manager, he has:

- denied the senior secured lenders access to critical information about the condition of the Alleged Debtor;

- written millions of dollars of checks without any disclosure to the senior secured lenders, despite their requests for such information;

- barred the senior secured lenders' representatives from the Alleged Debtor's offices;

- failed to take basic steps to safeguard the Alleged Debtor's assets; and

- consistently and deceptively pursued an agenda that elevates his personal interests and those of his co-investors over those of Oak Rock's creditors, most significantly the senior secured lenders whose rights he has gone out of his way to diminish.

In the face of an admitted, massive fraud by the Alleged Debtor, which is now the subject of federal criminal investigation, lacks anyone amongst its small handful of employees competent to make day-to-day lending decisions and has grossly failed to follow basic protocols of crisis management, this Court should (i) immediately appoint an interim chapter 7 trustee to marshal, protect and preserve the assets of the Alleged Debtor's estate and to operate the business of the Alleged Debtor, (ii) shorten the deadlines necessary for granting an order for relief, and (iii) grant the limited provisional relief that IDBNY has requested, which would prevent the Alleged Debtor from paying any purported creditors other than operating expenses and transferring its assets out of the ordinary course without first seeking the permission of this Court on notice to the Petitioning Creditors, and would permit those senior secured lenders that maintain accounts for the Alleged Debtor to institute an "administrative hold" on the Alleged Debtors' accounts in accordance with settled law.

It is imperative that a competent and disinterested person be given control over the Alleged Debtor's affairs immediately. The Alleged Debtor is a specialty asset-based lending company that was founded and, until days ago, solely managed by Murphy and which employs no more than a small handful of back-office personnel who lack the experience to operate the business. The lack of experienced and qualified management and personnel, the insider status of Stephens and the uncertainty arising from a pending criminal investigation threatens a panic from the Alleged Debtor's customers and various stakeholders -- of which there are many, including Oak Rock's senior secured lenders, subordinated debt holders, participants, equity

investors and customers -- and jeopardizes the ability to liquidate the Alleged Debtor's assets in an orderly fashion.

In order to achieve an orderly liquidation, it is essential that someone with actual experience operating and liquidating a finance company be engaged to run-off the Alleged Debtor's loan portfolio and make day-to-day credit decisions while the portfolio is run-off. Stephens has demonstrated a recalcitrant and inexplicable resistance to engaging such a person. An interim chapter 7 trustee should and will have no hesitation to retain an appropriately qualified person to assist him or her. Moreover, an interim trustee is necessary to protect the rights of the senior secured lenders -- which, on account of the Alleged Debtors' fraud, also hold a substantial portion of the unsecured claims -- and all other creditors of this estate.

For these reasons, and those set forth herein, IDBNY, on behalf of itself and its co-lenders in the syndicate, respectfully requests the immediate appointment of an interim chapter 7 trustee and the acceleration of the Alleged Debtor's time to answer, and of the trial on the merits of, the Petition.


## JURISDICTION AND PROCEDURAL POSTURE

The Court has jurisdiction over this Motion pursuant to 11 U.S.C. §§ 303 and 701 and 28 U.S.C. § 1334. This is a core proceeding pursuant to §§ 157(b)(2)(A), 157(b)(2)(O) and 157(a) of Title 28 of the United States Code. Venue in this District is proper pursuant to 28 U.S.C. § 1409(a). The statutory predicate for the relief requested is 11 U.S.C. §§ 105, 303 and 701.

On April 29, 2013, IDBNY, Bank Leumi USA and Bank Hapoalim (collectively, the "Petitioning Creditors") filed an involuntary Chapter 7 petition the Debtor (the "Petition"). No order for relief has as yet been entered with regard to the Petition.

## THE FACTS

### The Alleged Debtor

Oak Rock is a limited liability company organized under the laws of Delaware, having its sole place of business in Bohemia, New York. Oak Rock is a specialty asset-based lending company that (i) lends to dealers that, in turn, provide installment financing on consumer products, (ii) "factors," *i.e.,* purchases receivables of, operating businesses, (iii) purchases charged-off or delinquent customer or credit card receivables, and (iv) provides leasing and financing services for automobiles and equipment. Oak Rock has been a client of IDB for at least 12 years. The company was founded and, until days ago, solely managed by Murphy. Declaration of Jerry Hertzman (the "Hertzman Declaration") ¶¶ 9-10.

### The Bank Group, the Credit Agreement and Liquidation Assistance Agreement

IDBNY is a full-service commercial bank chartered by the State of New York, with its principal place of business located at 511 Fifth Avenue, New York, New York. Among the banking services that IDBNY provides are asset-based loans and credit facilities to commercial lenders and other companies. IDBNY, both as lender and as agent for a bank syndicate that includes Bank Leumi USA, Capital One, N.A., Bank Hapoalim, B.M. and First National Bank of New York (the "Bank Group"), are parties to an Amended and Restated Credit Agreement, dated May 27, 2011 (as amended, the "Credit Agreement") with Oak Rock whereby the Bank Group agreed to extend a revolving credit facility of up to $96 million to Oak Rock. Hertzman Declaration ¶ 12. The Credit Agreement and the subsequent amendments thereto are attached as Exhibits A & B to the Hertzman Declaration.

Pursuant to a contemporaneously executed Amended and Restated Security Agreement (the "Security Agreement") advances under the facility are fully secured by all of Oak Rock's

personal property and other assets, including all of Oak Rock's cash, receivables, chattel paper, furniture, equipment and books and records, on all of which IDBNY, for itself and as agent for the Bank Group, has a lien. Hertzman Declaration ¶ 13. See also Security Agreement, attached as Exhibit C to the Hertzman Affidavit, at Section 9.

The Credit and Security Agreements provide extensive rights to the Bank Group to inspect and protect its collateral. See Credit Agreement, at Section 2.12; Security Agreement, at Section 8. Additionally, pursuant to Section 9 of each of the Credit and Security Agreements, IDBNY has extensive rights to take action to protect its collateral upon the occurrence of one or more events of default, as defined in these agreements. Hertzman Declaration ¶ 14. See also Credit Agreement, at Section 9; Security Agreement, at Section 9.

IDBNY duly perfected its security interest in the Collateral by filing U.C.C. financing statements with the Delaware Secretary of State. Hertzman Declaration ¶ 15. See also Exhibit D to the Hertzman Declaration.

**The Uncovering of a Massive Fraud at Oak Rock,**
**Appointment of Stephens as Manager and Empaneling of a Grand Jury**

Stephens claims that on April 17, 2013, he discovered that Murphy had been perpetrating a long-running, extensive fraud with Oak Rock by creating fictitious records in order to increase Oak Rock's borrowing base. See Hertzman Declaration, ¶¶ 16-17. Murphy resigned on April 17, 2013 following the discovery of the fraud. Stephens, who IDBNY understands personally invested $1.5 million in Oak Rock and is the manager of Oasis, which invested a total of $15 million in Oak Rock, has taken control of Oak Rock following Murphy's resignation, pursuant to a document purportedly signed by Murphy and Oak Rock's other largest equity investor, Jack Dell, appointing Stephens, as of April 18, 2013, as the sole manager of Oak Rock. See id., ¶¶ 17-19.

Stephens reported Murphy's fraud to IDBNY the following day, April 18, 2013. See Hertzman Declaration, ¶¶ 16-17. Stephens acknowledged to IDBNY's representatives that, in light of Murphy's fraud, which Stephens estimates to be in the order of $70 million, Oak Rock cannot possibly continue as a going concern and must be orderly liquidated. See id., ¶ 20. Additionally, Stephens told IDBNY that he had brought the evidence of Murphy's fraud to the attention of federal prosecutors in the Eastern District of New York, who have commenced a criminal investigation. See id., ¶ 21.

**The Notice of Default and Bank Group's Efforts To Protect Oak Rock's Assets**

As of April 18, 2013, when Stephens notified IDBNY of the fraud at Oak Rock, the Bank Group was owed from Oak Rock $89,910,826 in principal alone, $32,779,869 of which was owed to IDBNY. See Hertzman Declaration, ¶ 22.

In response to the information it learned from Stephens, IDBNY took immediate steps to protect its and the Bank Group's collateral. It issued notices of default and reservation of rights, dated April 23, 2013, to Oak Rock, copies of which are collectively attached as Exhibit G to the Hertzman Declaration.

Additionally, in order to protect its collateral and interests, IDBNY also hired RAS Management Advisors, LLC ("RAS"), a crisis management firm with substantial experience with financial frauds, to examine the Bank Group's collateral – including the Oak Rock's loan documents with its customers, its computers and its books and records – to determine the nature, scope and size of the fraud perpetrated by Murphy, and sought to gain access for RAS to enter Oak Rock's premises and inspect its computers and records. Hertzman Declaration ¶ 25.

IDBNY further identified a person with the requisite combination of experience making day-to-day commercial lending decisions, managing a crisis situation and, above all else,

liquidating a specialty finance company to serve as Oak Rock's Chief Restructuring Officer ("CRO"). The person IDBNY identified, with the imprimatur of the entire Bank Group, was Mark Fagnani, whose qualifications are attached as Exhibit J to the Hertzman Declaration. Mr. Fagnani, who operates his own consulting business called MSF Associates, LLC, is the former Chief Credit Officer of Wachovia Capital Finance, an asset based lending unit of Wachovia Bank. He is a banking veteran of 34 years, who has extensive experience with lending and credit procedures, debt restructuring, multi-lender loan syndications, facilitating workouts of troubled loans, fraud crises and, most significantly, liquidating a finance company. See Hertzman Declaration Exhibit J.

**Stephens's Exercise of Misguided Control over Oak Rock**
**And His Repeated Stiff-Arming of IDBNY**

However, despite the Bank Group's clear rights under the Credit and Security Agreements to access and protect its collateral, Stephens has exercised complete control over Oak Rock and its assets largely to exclusion of the Bank Group. Additionally, he has repeatedly denied IDBNY's reasonable, lawful and contractually-enforceable right to protect its collateral. Hertzman Declaration ¶ 27.

Stephens initially refused to provide RAS with access to any of Oak Rock's books and records. When RAS representatives were finally permitted onto the premises, they were given little, if anything, to review. Eventually, more than a week after the fraud was discovered, RAS was given access to chattel paper and certain books and records, but was denied, until yesterday, access to Oak Rock's computer system and, most importantly, to Murphy's computer, which presumably is the key to unraveling Murphy's fraud but which Stephens has taken sole possession of. Stephens's cooperation was limited and short-lived. On April 29, 2013, in plain violation of the Senior Secured Creditors' rights under the Credit Agreement, he barred RAS

from the Alleged Debtor's offices without offering any explanation at the time. Hertzman Declaration ¶ 28; Declaration of Timothy Puopolo ("Puopolo Declaration"), at ¶¶ 3-4.

Stephens also has failed to take basic steps to protect Oak Rock's assets, *i.e.*, the Senior Secured Lenders' collateral. See Puopolo Declaration, at ¶ 8; Hertzman Declaration, at ¶ 30. He has not safeguarded access to Oak Rock's mainframe computer or to Murphy's hard drive, which Stephens apparently has accessed and, therefore, may have compromised its integrity as evidence. He has not installed any alarm or security cameras, and only after the Senior Secured Lenders paid to install a security guard this past weekend did Stephens first think to hire a security firm. Nevertheless, internal employee access -- including that of Murphy's son-in-law -- still appears not to be restricted or monitored. Additionally, there are still no restraints, such as a lock, preventing access to Oak Rock's server, and Murphy's computer is in the office now occupied by Stephens which remains open during the day. Original chattel paper is in unlocked cabinets in unlocked offices. This lack of basic security created an opportunity for Murphy or others to remove and/or tamper with evidence and exposed Oak Rock to a theft of its property. See Hertzman Declaration, at ¶ 30.

Moreover, Stephens has provided little, if any, insight as to what he has been doing over the past week to operate the business. He has concealed from the Bank Group, which is, by far, the largest stakeholder in Oak Rock and the senior secured creditor, what payments he has been making. Hertzman Declaration ¶ 29.

### Stephens's Resistance to Engaging an Expert Qualified and Experienced to Liquidate a Finance Company

Stephens also has stubbornly and inexplicably resisted IDBNY's recommendation to install Fagnani as Oak Rock's CRO. He met with Fagnani briefly toward the beginning of last

week, and then, through his advisors, disclosed to IDBNY that he did not like Fagnani's attitude and that he would not select him as a CRO.   Hertzman Declaration ¶ 31.

Instead, Stephens set out to interview his own self-selected candidates to serve as CRO of Oak Rock.  Despite repeated requests, he initially refused to identify whom he was interviewing. Later, he identified the firms he was interviewing, but refused to identify the individuals and their qualifications until after he had selected (without any input from the Senior Secured Lenders) the CRO.  Hertzman Declaration ¶ 32.

On Friday, April 26, Stephens, through his advisors, informed IDBNY that he had decided to hire the firm of CohnReznick to serve as CRO of Oak Rock.  Hertzman Declaration ¶ 33.  A copy of the e-mail from Stephens's attorney apprising IDBNY of the selection is attached as Exhibit K to the Hertzman Declaration.

CohnReznick is the result of a merger of two middle-market accounting firms, J.H. Cohn and Reznick, Fedder & Silverman, that apparently also provides restructuring and turn-around services, but has no discernible experience either operating or liquidating a finance company. Hertzman Declaration ¶ 34.

IDBNY has been informed that the engagement will be headed by Cliff Zucker, a partner based in New Jersey in the "Restructuring, Litigation and Transactional Services" group whose biography is attached as Exhibit L to the Hertzman Declaration.  Zucker's bio manifests no experience operating or liquidating a finance company.  Three other principals and/or senior managers and/or managers in the "Valuation Advisory Services" group, IDBNY has been informed, also would work on the engagement.  Like Zucker, *none* reports experience operating or liquidating a finance company in their biographical information. Hertzman Declaration ¶ 35. See also Exhibits K & L to the Hertzman Declaration.

While a team of CohnReznick representatives might eventually learn the ins and outs of operating a finance company, neither Oak Rock nor the Senior Secured Lenders has the luxury of that time, nor the finances to pay for such an exercise.    Moreover, CohnReznick appears to have adopted, without question, the same resentful approach toward the Senior Secured Lenders that Stephens has promoted.    Shortly after CohnReznick's team arrived at Oak Rock's offices yesterday, Stephens barred RAS from the premises.  Hertzman Declaration ¶ 36.

The Senior Secured Lenders have advised Stephens that they do not approve of the selection of CohnReznick as CRO of Oak Rock.    Despite that, counsel to Stephens has informed IDBNY's counsel that Stephens has hired CohnReznick.  Hertzman Declaration ¶ 37.

Oak Rock is in dire need of a manager with experience operating and liquidating a specialty finance company now.    Neither Stephens nor CohnReznick has that experience. Hertzman Declaration ¶ 38.

### Stephens's Self-Interested Payments

Stephens's stiff-arming of the Bank Group appears to be part of an agenda to elevate the interests of himself and other co-investors above that of the Bank Group.    See Hertzman Declaration, at ¶ 39.  Stephens has recently made substantial payments to himself, which raise serious questions regarding his self-interestedness and judgment.  See Hertzman Declaration, at ¶ 40.

Equally significantly, IDBNY has learned that Stephens has paid $75,000 to a consulting firm called Gladstone Consulting Inc. ("Gladstone"), a two person restructuring firm based in Pittsburgh that Stephens informed the bank he had engaged to provide restructuring advice.  See Puopolo Declaration, at ¶ 10.  In fact, Gladstone's two principals, Aubrey and Marianne Gladstone, IDBNY has learned, were investors in Oasis whose money Stephens invested in Oak

Rock. <u>See id.</u> Stephens's payment to Gladstone further confirms the appearance that Stephens's agenda is to repay himself and his co-investors at the expense of the Senior Secured Lenders. <u>See</u> Hertzman Declaration, at ¶ 41.

## THE RELIEF REQUESTED

### A. Appointment of Interim Trustee

IDBNY seeks the immediate appointment of an Interim Trustee to protect and preserve the assets in the Alleged Debtor's estate. IDBNY submits that swift action is necessary to preserve the Debtor's books and records and the accounts receivable and prevent any further diminution in value of the estates' assets to the detriment of all of the estates' creditors.

There is clear statutory predicate for the relief sought. Section 303(g) of the Bankruptcy Code provides in relevant part that:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g). Appointment of a trustee during the "gap" period is available whenever such appointment "would protect and preserve property of the estate . . . [or] prevent concealment, waste or loss of assets by the alleged debtor." <u>In re DiLorenzo</u>, 161 B.R. 752, 754 n.8 (Bankr. S.D.N.Y. 1993). <u>See also</u> <u>In re Alpine Lumber & Nursery</u>, 13 B.R. 977, 979 (Bankr. S.D.Cal. 1981) (interim trustee appointed if such appointment is necessary to prevent loss to the estate).

In this case, the appointment of an Interim Trustee is appropriate as a matter of law and necessary to preserve the property of the estate or to prevent loss to the estate during the "gap"

period. Without the immediate appointment of an Interim Trustee capable of managing Oak Rock during this period of severe crisis, it is a virtual certainty that the estate will suffer disastrous waste and loss of assets, causing further irreparable harm to all creditors. There is no one currently associated with the Alleged Debtor competent to run-off the Alleged Debtor's loan portfolio and its management refuses to retain someone qualified to do so. Furthermore, the Alleged Debtor's dereliction of its fiduciary obligations to its creditors or perhaps more accurately, its intentional conduct to thwart IDBNY's attempts to discover the true state of their affairs, presents the precise type of dangers of waste and loss of assets requiring the appointment of a trustee, particularly during the "gap" period. IDBNY submits that such appointment will reduce or eradicate the risk of irreparable harm that would be suffered by the estate and its creditors if a trustee is not appointed on an expedited basis. See, e.g., DiLorenzo, 161 B.R. at 754 n.8; In re Reed, 11 B.R. 755 (Bankr. S.D. W. Va. 1981).

Indeed, some of Stephens' recent actions crystalize the need for the immediate appointment of a trustee. Stephens has selected companies with whom he has a close history (whose money he invested in Oak Rock) to work as supposed "independent" consultants and other advisors to Oak Rock. Furthermore, Stephens has made payments to himself and other entities in which he has a clear interest. Stephens -- and therefore Oak Rock, which is now acting under Stephens' direction and control – have run afoul of a basic dictum of corporate and bankruptcy law, that the directors and officers of an insolvent or bankrupt corporation owe a fiduciary duty to the corporation's creditors. Geyer v. Ingersoll Publications Co., 621 A.2d 784, 787-88 (Del. Ch. 1992) (holding that upon insolvency, fiduciary duties of corporate directors and officers also run to creditors); In re Subpoena Issued to Friedman, 286 B.R. 505, 508 (S.D.N.Y. 2002) ("One of the fiduciary duties of directors of an insolvent corporation, and indeed, a

corporation near insolvency, is to take account of the interests of the corporation's creditors in business decisions."). IDBNY respectfully submits that the appointment of an Interim Trustee is necessary in order to prevent severe loss to the estate that would inevitably result if such Trustee is not appointed.

**B. Reduction of the Time to Answer to Ten (10) Days from Date of Petition**

IDBNY also respectfully submits that this Court should shorten the time for Oak Rock to answer or otherwise respond to the Chapter 7 petition to a period of no more than ten (10) days from today. Under Federal Rules of Bankruptcy Procedure 1011(a) & (b), a debtor named in an involuntary petition may contest the petition by answering or otherwise pleading within twenty-one days after service of the summons. However, this Court has authority to shorten that time to answer or otherwise respond, pursuant to Federal Rule of Bankruptcy Procedure 9006(c), which provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of the court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." See also Norton Bankruptcy Law and Practice § 161.8 (3rd ed.).

In this case, the Court should shorten the time to answer in order to prevent delay in the administration of the case and to allow the issues in this Chapter 7 proceeding to be swiftly adjudicated. Oak Rock is in imminent danger of collapse, and IDBNY and the other members of the Bank Group fear that if quick action is not taken, the entirety of Oak Rock's business – and thus the assets to which the creditors will look for recovery – will disappear. Thus, IDBNY respectfully requests that this Court order that the time for the debtor to respond to the bankruptcy petition be shortened to ten days from today.

## C. Reduction of the Time for Trial to Twenty (20) Days from Date of Petition

Likewise, IDBNY respectfully submits that this Court should shorten the time for trial to a date no more than twenty (20) days from today. This Court has also authority to shorten the time for trial pursuant to Federal Rule of Bankruptcy Procedure 9006(c). Like the time to answer, it is imperative that the trial date be scheduled within the next twenty days in order to prevent further deterioration of the assets of the Alleged Debtor's estate.

## D. Granting Limited Provisional Temporary Relief

### i. The Alleged Debtor Should Be Temporarily Enjoined From Making Any Payments Other Than For Critical Operating Expenses

Pursuant to Federal Rule of Civil Procedure 65, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7065, given the amount and quantity of recent questionable payments by the Alleged Debtor to insiders and unsecured creditors, the Alleged Debtor should be temporarily enjoined from making any payments or transfers of funds to purported creditors (including the Bank Group participants and investors), other than for operating expenses and from any non-ordinary course activities.

The standard for imposition of a temporary restraining order is the same for imposition of a preliminary injunction, and in this Circuit, a court will grant a motion for a preliminary injunction only where the party seeking the injunction can show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 116 (2d Cir.2009).

16

IDBNY has demonstrated entitlement to a temporary restraining order. First, IDBNY and the Lenders face irreparable harm because, as set forth in the Hertzman Declaration, the Alleged Debtor is in a precarious situation and the Bank Group's collateral is in grave danger. Hertzman Declaration ¶¶ 6, 44. Furthermore, even though the Lenders are the senior-secured parties, they are significantly under-secured in view of the Alleged Debtor's fraud so it is essential that the actual collateral that remains be protected. Id. ¶2.

The second requirement of a likelihood of success on the merits is also readily established because the validity of Oak Rock's obligations under the Credit Agreement is unquestioned, Oak Rock has admitted its breaches thereof, and Oak Rock is presently over-advanced by more than $47 million. Id. Thus, the second prong for demonstrating entitlement to a temporary restraining order has also been met.

### ii. The Members Of The Bank Group Should Be Authorized To Place Administrative Holds On The Alleged Debtor's Accounts

Finally, IDBNY respectfully requests that this Court grant an order authorizing the use of limited provisional temporary relief permitting the members of the Bank Group to place administrative holds, lasting for a period of no more than five days, on any accounts in the name of or under the control of Oak Rock. Such relief would merely confirm an administrative freeze of Oak Rock's accounts. In Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995), the Supreme Court held that the placing of an administrative hold on a debtor's account for a five-day period, where the institution placing the administrative hold has a potential claim for setoff rights, does not violate the automatic stay and is permissible. Thus, IDBNY respectfully requests that this Court grant an order authorizing the Bank Group to implement administrative holds on Oak Rock's accounts for a period of up to five days.

## NO PRIOR REQUEST

No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

IDBNY submits that for all of the foregoing reasons, appointment of an interim trustee is necessary to safeguard the Alleged Debtor's assets and prevent immediate irreparable harm to the Alleged Debtor's creditors and its estate, and the shortening of time to answer and the time for trial is necessary in order to expedite the administration of this estate and prevent further losses from crippling Oak Rock.

WHEREFORE, IDBNY respectfully requests that the Court enter an order to show cause why: (a) an interim trustee should not be appointed; (b) the time to answer the petition should not be reduced to a ten days from the date of filing of the bankruptcy petition; (c) the date for trial should not be set for twenty days after the date of filing of the bankruptcy petition; (d) the Alleged Debtor should not be temporarily enjoined from making payments or transfers to anyone other than for critical operating expenses and ordinary course activities; (e) members of the Bank Group should not be authorized to engage in limited temporary provisional relief in the form of administrative holds over the Alleged Debtor's accounts at such banks; and (f) this Court should not grant such other relief as the Court deems just and proper.

Dated: New York, New York
  April 30, 2013

        Respectfully submitted:

        OTTERBOURG, STEINDLER,
         HOUSTON & ROSEN, P.C.

      By: _____
         Adam C. Silverstein
         A Member of the Firm
      230 Park Avenue
      New York, New York 10169
      (212) 661-9100
      *Attorneys for Israel Discount Bank of New*
      *York, as Agent*