**OKIN, HOLLANDER & DELUCA, L.L.P.**                    **Hearing Date and Time:**
Paul S. Hollander, Esq.                                         **May 13, 2013 at 10:00 a.m.**
James J. DeLuca, Esq.
Gregory S. Kinoian, Esq. (GK-7386)
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, NJ 07024
New York, New York 10016
Tel:     (201) 947-7500
Fax:     (201) 947-2663
phollander@ohdlaw.com
jdeluca@ohdlaw.com
gkinoian@ohdlaw.com

Attorneys for North Mill Capital LLC and
ZFI Endowment Partners, L.P.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                     Chapter 11

**OAK ROCK FINANCIAL, LLC**,                             Case No. 8-13-72251-DTE

Debtor.
----------------------------------------------------------x

**APPLICATION IN SUPPORT OF MOTION FOR ENTRY OF ORDER, PURSUANT TO
11 U.S.C. §§ 541(d) AND 105(a), COMPELLING DEBTOR TO SEGREGATE FUNDS IN
CONNECTION WITH LOAN PARTICIPATION INTERESTS SOLD TO NORTH MILL
CAPITAL LLC AND ZFI ENDOWMENT PARTNERS, L.P. AND
GRANTING RELATED RELIEF**

North Mill Capital LLC ("North Mill") and ZFI Endowment Partners, L.P. ("ZFI"), by

and through their attorneys, Okin, Hollander & DeLuca, L.L.P., submit this Application in

support of their motion (the "Motion") seeking entry of an order, substantially in the form

annexed hereto as **Exhibit A** (the "Proposed Order"), pursuant to 11 U.S.C. §§ 541(d) and

105(a), compelling Oak Rock Financial, LLC ("Oak Rock" or the "Debtor") (1) to segregate and

hold in escrow any funds received or to be received from the Debtor's borrowers,

Amerimerchant LLC ("Amerimerchant") and Merchants Advance LLC ("Merchants Advance")

(Amerimerchant and Merchants Advance referred to herein collectively as the "Client/Borrower," as such term is further defined herein), under a certain Loan, Security and Service Agreement dated as of February 17, 2005, as subsequently modified from time to time (as modified, the "Loan Agreement" and the "Participated Loan"), in which Participated Loan North Mill and ZFI each have and hold participation interests, and (2) to provide daily reporting of all cash in and out with respect to such Participated Loan. On behalf of North Mill and ZFI, the following representations are respectfully made:

## INTRODUCTION

1.      North Mill holds a participation interest in the Participated Loan of up to the lesser of $4,000,000 or 17% of all Advances (as defined herein) made under the Participated Loan to the Client/Borrower. ZFI holds a participation interest in the Participated Loan of up to the lesser of $1,000,000 or 3.6% of all Advances made under the Participated Loan to the Client/Borrower. Upon information and belief, as of May 3, 2013, total advances under the Participated Loan exceeded a principal balance of approximately $28,615,600.

2.      The relief sought in this Motion is consistent with the plain language of 11 U.S.C. § 541(d) and applicable case law regarding the equitable interests of a debtor, such as the Debtor here, that is a lead lender under loan participations, such as the Participated Loan and each of the Participation Agreements (as defined herein) here. In this case, North Mill's and ZFI's Participation Agreements each evidence all of the hallmarks of valid and true participations. Accordingly, North Mill's and ZFI's respective participation interests in the Participated Loan are, and should be deemed to be, expressly excluded from the property of the Debtor's bankruptcy estate. The Debtor retains only a legal interest to service the Participated Loan. Thus, funds received and to be received by the Debtor from the Client/Borrower with respect to

the Participated Loan belong to North Mill and ZFI, subject to their respective participation

interests therein, and therefore must be segregated and held in escrow for the benefit of North

Mill and ZFI.

3.       On May 1, 2013, North Mill should have been paid interest in the amount of

$33,333, allocable to April 2013, based on North Mill's participation interest in the outstanding

balance of total Advances made under the Participation Loan; however, as of the date hereof

North Mill has not received such interest payment from the Debtor.  Likewise, on May 1, 2013,

ZFI also should have been paid interest, allocable to April 2013, based on ZFI's participation

interest in the outstanding balance of total Advances made under the Participation Loan (the

amount of the interest payment due to ZFI could not be obtained as of the filing hereof);

however, as of the date hereof ZFI has not received such interest payment from the Debtor.

4.       Each of the Participation Agreements requires reporting by Oak Rock and access

to information requested by, respectively, North Mill and ZFI.  It is essential that the Debtor be

directed to comply with the reporting and access to information requirements.

## **BACKGROUND**

5.       On April 29, 2013 (the "Petition Date"), Israel Discount Bank of New York

("IDB") and certain other petitioning creditors (collectively, the "Petitioning Creditors") filed an

involuntary petition under Chapter 7 of the title 11 of the United States Code (11 U.S.C. §§ 101

to 1524 (the "Bankruptcy Code")) against Oak Rock.[1]

---

[1] The Petitioning Creditors each allege secured claims against the Debtor and each agreed to waive security
with respect to $10,000 of each of their claims in order to qualify as a petitioning creditor under section 303 of the
Bankruptcy Code.  As evidenced by, among other things, certain amendments, each filed on October 12, 2010, to
certain UCC Financing Statements filed by IDB against Oak Rock, IDB's asserted secured interest in the Advances
under the Participated Loan was specifically eliminated as to the Participation Agreement held by North Mill.  *See*
paragraph 15 below and Exhibit C hereto.

6.    On May 5, 2013, Oak Rock filed a motion to convert the involuntary Chapter 7 case to a case under Chapter 11 of the Bankruptcy Code.

7.    On May 6, 2013, a hearing was held to consider the motion of IDB for the appointment of an operating Chapter 7 trustee and the Debtor's motion to convert the involuntary Chapter 7 case to one under Chapter 11 of the Bankruptcy Code (the "May 6th Hearing").

8.    On May 6, 2013, the Court entered an order [Docket No. 37] converting the involuntary Chapter 7 case to a Chapter 11 case and authorizing the Debtor to manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

9.    On May 6, 2013, the Petitioning Creditors filed a motion seeking the appointment of a Chapter 11 trustee.  A hearing to consider that motion is scheduled for May 13, 2013 at 10:00 a.m. (the "May 13th Hearing").

10.    At the May 6 Hearing, North Mill and ZFI learned, among other things, that the Debtor was not currently segregating funds received from the Client/Borrower on account of the Participated Loan (collectively, the "Participation Funds").  At the May 6 Hearing, the Court stated that holders of participation interests would be permitted to file pleadings for consideration at the May 13th Hearing.

**The Participated Loan**

11.    On or about February 17, 2005, Oak Rock entered into the Loan Agreement with Amerimerchant and Merchants Advance pursuant to which Oak Rock agreed to advance up to, initially, $2,000,000.00 or 60% of Eligible Receivables.  Upon information and belief, from time to time over a period from November 2005 through December 31, 2012, the Loan Agreement was modified to, among other things, increase the advance limit to, ultimately, $30,000,000 or 75% of Eligible Receivables.  The modifications to the Loan Agreement over that period also, among other things, identified additional borrowers under the Loan Agreement (for purposes

hereof, references to the "Client/Borrower" herein shall include all borrowers under the Loan Agreement).

12.    Upon information and belief, as of May 3, 2013, total Advances under the Participated Loan exceeded a principal balance of approximately $28,615,600.

**North Mill's Participation Interest in the Participated Loan**

13.    On or about November 25, 2008, Oak Rock and Summa Capital Corp. ("Summa") entered into a Participation Agreement, a copy of which is attached hereto as **Exhibit B**, pursuant to which Summa acquired a participation interest of 10% in each Advance (as defined in the Participation Agreement) made to the Client/Borrower under the Loan Agreement up to a maximum participation amount of $1,500,000 (the "Summa Participation Agreement").

14.    In October 2010, North Mill acquired a loan portfolio from Summa which included the Summa Participation Agreement.  In connection with its acquisition of the Summa loan portfolio, including the Summa Participation Agreement, North Mill obtained UCC searches against Oak Rock which reflected three (3) UCC Financing Statements filed against Oak Rock by IDB and/or Israel Direct Bank, as administrative agent (for purposes hereof, references to IDB shall include Israel Direct Bank).

15.    At the time North Mill acquired the Summa loan portfolio, North Mill required that IDB file amendments to its UCC Financing Statements (collectively, the "UCC Amendments") against Oak Rock which specifically eliminated the security interest of IDB in the Advances which are the subject to the Summa Participation Agreement.  The UCC Amendments were prepared by North Mill's counsel and were filed with the Delaware Secretary of State by IDB's counsel at that time (the firm of Loeb & Loeb). Copies of the filed UCC Amendments are attached hereto as **Exhibit  C**.  Additionally, by letter dated October 22, 2010,

a copy of which is attached hereto as **Exhibit D**, Oak Rock specifically acknowledged and consented to the transfer/assignment of the Summa Participation Agreement from Summa to North Mill (hereinafter, the Summa Participation Agreement shall be referred to as the "North Mill Participation Agreement").

16.     By letter agreement dated September 21, 2012, a copy of which is attached hereto as **Exhibit E**, Oak Rock and NMC modified the North Mill Participation Agreement by, among other things, increasing NMC's participation amount from $1,500,000 to the lesser of $4,000,000 or 17% of the Advances (references herein to the North Mill Participation Agreement shall be to such agreement as amended by the September 21, 2012 letter agreement).

**ZFI's Participation Interest in the Participated Loan**

17.     On or about March 30, 2013, Oak Rock and ZFI entered into a Participation Agreement, a copy of which is attached hereto as **Exhibit F**, pursuant to which ZFI acquired a participation interest in each Advance made to the Client/Borrower under the Loan Agreement up to the lesser of $1,000,000 or 3.6% of all Advances made by Oak Rock to the Client/Borrower (the "ZFI Participation Agreement") (the North Mill Participation Agreement and the ZFI Participation Agreement being referred to herein collectively as the "Participation Agreements").

**Common Terms of the Participation Agreements**

18.     The North Mill Participation Agreement and the ZFI Participation Agreement are substantially similar.  Each of the Participation Agreements contains the following relevant provisions:

- Oak Rock sold, without recourse, a participation in the loans made to each of the Client/Borrower in the amounts and percentages set forth in each Participation Agreement. (§ 2.1)

- Oak Rock has the sole right to manage, perform and enforce the terms of the financing agreements with the Client/Borrower. (§ 4.1)

- North Mill's and ZFI's respective participation interest in the Participated Loan and repayments of principal and interest by each Client/Borrower are to be held by Oak Rock "as custodian for the benefit of" North Mill and ZFI, respectively.  (§ 3.6)

- North Mill and ZFI, respectively, each represented that it made its own independent credit analysis of the Client/Borrower and did not rely on Oak Rock to provide information regarding the credit-worthiness of the Client/Borrower. (§ 4.5)

- North Mill and ZFI are each entitled to monthly reporting from Oak Rock, and access to Oak Rock's books and records relating to Oak Rock's transactions with North Mill and ZFI, respectively. (§§ 3.2 and 4.3)

- Each Participation Agreement "is intended by the parties … to effect an arms' length purchase by Participant [i.e., respectively, North Mill and ZFI]" of the participation interests in the Participated Loan, and "is not to be construed as a loan or a commitment to make a loan." (§ 6.5)

- The Participated Loan is acquired by, respectively, North Mill and ZFI without recourse to Oak Rock and for the own account and risk of, respectively, North Mill and ZFI.  Oak Rock does not guarantee repayment of any of the Participated Loan. (§ 4.4)

**Current Status of Participation Funds**

19.    Upon information and belief, the Debtor is currently using and/or intends to use Participation Funds that belong to North Mill and ZFI, respectively, to service not only the Participated Loan, but also loans in which neither North Mill nor ZFI has a participation interest. In fact, on May 1, 2013, North Mill and ZFI each should have been paid interest allocable to April 2013 based on North Mill's and ZFI's participation interests in the outstanding balance of total Advances made under the Participation Loan; however, as of the date hereof neither North Mill nor ZFI has received such interest payment from the Debtor (the interest payment due to North Mill was $33,333; the amount of the interest payment due to ZFI could not be obtained as of the filing hereof).

20.    At the present time, North Mill and ZFI are concerned about the misapplication of Participation Funds by the Debtor.  For example, upon information and belief, principal and interest payments are being received by Debtor from the Client/Borrower with respect to the Participated Loan and those principal payments and interest should be applied to North Mill and ZFI, respectively, as otherwise required under the terms of each of the Participating Agreements.

21.    Based on cash flow projections provided to North Mill and ZFI, through their counsel, for the Debtor through week ending May 10, 2013, there is no evidence that the Debtor is or intends to segregate funds relating to the Participated Loan and no provision for the Debtor to be making the past due interest payments with respect to the Participation Agreements.

**RELIEF SOUGHT**

22.    By this Motion, North Mill and ZFI respectfully request that the Court enter the Proposed Order (a) compelling the Debtor to provide North Mill and ZFI with relevant ledger sheets for the Participated Loan since March 31, 2013, as well as daily, detailed transactional accountings of (i) daily advances, (ii) daily collections, (iii) daily collateral, and (iv) daily eligible collateral; (b) compelling the Debtor to segregate and hold in escrow all funds received and to be received from the Client/Borrower on account of the payments of principal and interest on account of the Participated Loan under the terms of the respective Participation Agreements; and (c) prohibiting the Debtor from using the Participation Funds without the prior written consent of North Mill and ZFI, respectively.

**BASIS FOR RELIEF**

23.    North Mill and ZFI are each entitled to the segregation of funds received under the Participated Loan because North Mill's and ZFI's respective participation interests in those funds is not property of the Debtor's bankruptcy estate.  The plain language of Bankruptcy Code

Section 541(d), which limits what constitutes property of the estate, as well as the case law

interpreting that provision, are clear that loan participation transactions are not subject to the

otherwise broad definition of property of the estate.  The Debtor has only an interest in servicing

the Participated Loan, not the proceeds from payments of principal or interest on account of the

Participated Loan.

24.    Section 541(d) of the Bankruptcy Code provides that:

> Property in which the debtor holds, as of the commencement of the
> case, only legal title and not an equitable interest, such as a mortgage
> secured by real property, or an interest in such mortgage, sold by the
> debtor but as to which the debtor retains legal title to service or supervise
> the servicing of such mortgage or interest, becomes property of the estate
> … only to the extent of the debtor's legal title to such property, but not to
> the extent of any equitable interest in such property that the debtor does
> not hold.

11 U.S.C. § 541(d).

25.    As this Court has noted, the enactment of Section 541(d) was intended to protect

purchasers in the secondary loan markets, which includes sales of loan participations.  *See* In re

Sprint Mortgage Bankers Corp., 164 B.R. 224, 228 (Bankr. E.D.N.Y. 1994); In re Coronet

Capital Co., 142 B.R. 78, 80 (Bankr. S.D.N.Y. 1992) ("The purpose of § 541(d), as applied to the

secondary mortgage market is to make certain that secondary mortgage market sales (***like loan***

***participation agreements***) … are not subject to challenge by bankruptcy trustees.") (emphasis

added).  "Pursuant to §541(d), the Court has the authority to recognize the division of legal and

equitable interests … provided that the transaction is a true mortgage participation.  The Trustee

will hold the property … subject to the outstanding and superior equitable interests of the

beneficiaries."  Sprint Mortgage, 164 B.R. at 228.

26.    In this case, there can be no dispute that each of the Participation Agreements is a

true participation, and thus North Mill's and ZFI's respective participation interests in the

Participated Loan are, and should be deemed to be, excluded from property of the Debtor's estate under section 541(d). As this Court has enunciated, true participations possess the following characteristics: "a) money is advanced by participant to a lead lender; b) a participant's right to repayment only arises when a lead lender is paid; c) only the lead lender can seek legal recourse against the borrower; and d) the document is evidence of the parties' true intentions." Id. (citing *In re Coronet Capital Co.*, 142 B.R. at 82).

27.    Furthermore, whether there has been a guarantee of repayment by the lead lender is crucial in determining whether the given transaction should be classified as a true participation or not. "The existence of a guarantee seems to result in a finding of a debtor-creditor relationship in most cases. In contrast, under traditional loan participation agreements, a 'participant' normally assumes the same risk as the person selling the participation. In participation transactions, no guarantees are given, and participants share in risk and must rely on the creditworthiness of the borrower and the collateral." Id. at 228-29 (internal quotations and citations omitted).

28.    Here, each of the Participation Agreements in the Participated Loan satisfies all of the criteria for true participations. First, and most importantly, the Debtor has not guaranteed the repayment of the underlying loan. North Mill and ZFI each share the same risk with the Debtor of non-payment by the Client/Borrower, and each has made its own independent determination of the credit-worthiness of the Client/Borrower. The funds are advanced to the Debtor as lead lender by the participants (i.e., North Mill and ZFI), and North Mill's and ZFI's respective rights to payment does not arise until the Debtor receives payment from the Client/Borrower. Neither North Mill nor ZFI has a direct claim against the Client/Borrower, and only the Debtor can seek

legal recourse against the Client/Borrower.  Lastly, the Participation Agreements make clear the parties' intentions that the participations are not to be construed as loans.

29.     Because the Participation Funds are not property of the estate, the Debtor should be required to segregate and escrow all funds received and to be received from the Client/Borrower in payment of the Client/Borrower's obligations under the Participated Loan. The Participation Agreements themselves expressly provide that the Debtor shall hold "as custodian for the benefit of" North Mill and ZFI, respectively, their respective participation interests in the Participated Loan.  Simply put, the Debtor should not commingle the Participation Funds with its own funds, may not utilize the Participation Funds to pay its obligations or to service other loans, and may not otherwise use the funds without the prior written consent of North Mill and ZFI, respectively.

30.     Furthermore, as lead lender and servicer of the Participated Loan, the Debtor suffers no prejudice in segregating and escrowing the Participation Funds.

31.     Lastly, the reporting requirements are obligations with which the Debtor must comply under the Participation Agreements.  Moreover, given the upheaval surrounding the Debtor's situation leading to the involuntary filing, and the significant allegations of fraud asserted by the petitioning creditors, there is a manifest need for transparency and reporting, which have so far not been evidenced in this case.

## NOTICE

32.     North Mill and ZFI, through their counsel, have provided notice of this Motion to: (i) counsel for the Debtor, (ii) the Office of the United States Trustee, (iii) counsel to the Petitioning Creditors, and (iv) all parties that have filed notices of appearance in the Debtor's bankruptcy case.

33.     No previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, North Mill and ZFI each respectfully request that this Court grant the relief requested herein, enter the Proposed Order and grant such other and further relief as this Court may deem just and proper.

Dated: Fort Lee, New Jersey
        May 8, 2013

**OKIN, HOLLANDER & DeLUCA, L.L.P.**,
Attorneys for North Mill Capital LLC and
ZFI Endowment Partners, L.P.

By: */s/ Gregory S. Kinoian*
        Paul S. Hollander, Esq.
        James J. DeLuca, Esq. (JD-4434)
        Gregory S. Kinoian, Esq. (GK-7386)
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, NJ 07024
New York, New York 10016
Tel:    (201) 947-7500
Fax:    (201) 947-2663