**OKIN, HOLLANDER & DeLUCA, L.L.P.**
Paul S. Hollander, Esq.
Gregory S. Kinoian, Esq.
Margreta M. Morgulas, Esq.
One Parker Plaza, 12th Floor
400 Kelby Street
Fort Lee, NJ 07024
Tel:    (201) 947-7500
Fax:    (201) 947-2663
phollander@ohdlaw.com
gkinoian@ohdlaw.com
mmorgulas@ohdlaw.com

Attorneys for North Mill Capital LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                          Chapter 11

**OAK ROCK FINANCIAL, LLC**,                   Case No. 8-13-72251 (REG)

Debtor.                                        **Hearing Date and Time:  June 18, 2014 at 1:30 p.m.**
---------------------------------------------------------x

**OPPOSITION OF NORTH MILL CAPITAL LLC TO MOTION OF ISRAEL
DISCOUNT BANK OF NEW YORK FOR AN ORDER, PURSUANT TO RULE OF
BANKRUPTCY PROCEDURE 2004, COMPELLING THE PRODUCTION OF
DOCUMENTS AND TESTIMONY FROM CERTAIN OF THE DEBTOR'S
BORROWERS, BORROWERS' PRINCIPALS AND BORROWERS' BANKS**

North Mill Capital LLC ("**North Mill**") by and through it undersigned attorneys,

Okin, Hollander & DeLuca, L.L.P., hereby submits this memorandum in opposition

("**Opposition**") to the "Motion Of Israel Discount Bank Of New York For An Order, Pursuant

To Rule Of Bankruptcy Procedure 2004, Compelling The Production Of Documents And

Testimony From Certain Of The Debtor's Borrowers, Borrowers' Principals And Borrowers'

Banks" [Docket No. 591] (the "**Motion**").

In further support of the Opposition, North Mill relies upon the "Declaration of

Margreta M. Morgulas in Support of North Mill Capital LLC's Opposition to Israel Discount

Bank of New York's 2004 Motion" ("**Morgulas Declaration**"), which was filed substantially concurrently herewith, and the arguments and representations of counsel to be made at the hearing on the Motion.

## INTRODUCTION

North Mill has been determined by this Court to have a "true participation" interest in $4.0 million in principal of the total loan made by Oak Rock Financial, LLC ("**Oak Rock**" or "**Debtor**") to a single borrower in the prepetition period. The Court has further held that North Mill's "true participation" interest was not property of Oak Rock and, therefore, did not become property of the Debtor's estate. In light of the Court's holdings, North Mill has filed a motion requesting that the Court reconsider its implicit deferral of deciding the remainder of the relief request by North Mill – namely the requested release of the full value of North Mill's $4.0 million participation interest.

Although North Mill is optimistic that it will ultimately prevail and be granted all of the relief it has sought, unless and until North Mill obtains a final, non-appealable order so providing, North Mill has a real and protectable interest in the Debtor's Chapter 11 Case. Indeed, Israel Discount Bank of New York ("**IDB**"), as Agent for itself and its other co-lenders under the Debtor's prepetition loan agreement, continues to argue, as reflected in its recent opposition to North Mill's motion for reconsideration, that North Mill is not entitled to the return of the full value of its "true participation" interest. While North Mill believes IDB's argument is without merit, there is a risk associated with any litigation. Until the litigation is fully and finally resolved in North Mill's favor, North Mill has no option but to proceed in a manner that will ensure its interests are fully protected. This includes continuing to actively participate in the Debtor's Chapter 11 Case.

For this reason, North Mill has been earnestly participating in the on-going investigation of claims and causes of actions belonging to the Debtor's estate.   That is, North Mill <u>was</u> actively participating until IDB and others recently made it clear that they would not permit, in direct contravention of this Court's prior orders, North Mill to take part in certain pending examinations authorized by this Court pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**").

In the 13 months since IDB and certain of its co-lenders filed the involuntary Chapter 7 petition that ultimately led to the Debtor's Chapter 11 case ("**Chapter 11 Case**"), IDB and the Debtor have sought and obtained this Court's authorization, pursuant to Bankruptcy Rule 2004, to spearhead the examination of several parties that are unquestionably central to the investigation of, among other matters, potential claims and causes of action belonging to the Debtor's estate and creditors[1].   Additionally, the primary investors in and recipients of millions of dollars in transfers from the Debtor – Dell, the Prime Plus Entities, Stephens, and the Oasis Entities (collectively, "**Investors**") – have sought and obtained this Court's authorization, pursuant to Bankruptcy Rule 2004, to oversee the demand for production of documents from and oral examination of IDB pursuant to Bankruptcy Rule 2004.

To date, IDB, the Debtor, and the Investors have completed one (1) of the many authorized examinations – that of EisnerAmper, which concluded in May 2014 and resulted in

---

[1]    With the exception of the requested examination of and demand for request for documents from Christopher Murphy, which was filed by the Debtor, IDB has filed motions (in which the Debtor joined) pursuant to which IDB and the Debtor were granted the right to administer the examinations of and demand for production of documents from: EisnerAmper, LLP ("**EisnerAmper**"); John P. Murphy; Christopher Murphy; Thomas Stephens ("**Stephens**"), Oasis Oak Rock Investors, and certain related and entities (collectively, "**Oasis Entities**"); John E. Dell ("**Dell**"), Prime Plus Acquisition Corp., and certain related entities (collectively, "**Prime Plus Entities**"); and certain of the Debtor's borrowers.

the filing of state court actions asserting direct claims against EisnerAmper by each of IDB, the Prime Plus Entities, and the Oasis Entities. North Mill was allowed, as required by and in accordance with the terms and conditions established by the relevant orders of this Court, to (and, in fact, actively did) fully participate in the EisnerAmper examination.

At the recent May 7, 2014 hearing held in this Chapter 11 Case ("**May 7 Hearing**"), counsel to the Debtor, Mr. Salvatore LaMonica, informed the Court that the examination process has begun with respect to the Investors. With respect to the production of requested documents from the Investors, Mr. LaMonica represented to the Court that:

> …We have received a continued production
> of documents from Dell and -- Jack Dell, who's one of the
> managing directors, and Prime Plus and Mr. Stephens and his
> company, Oasis. The last production was on April 24th and on
> April 17th. We believe there's going to be one more production
> by the individuals, and I'm going to be pushing to schedule
> those 2004s, so we can get them done sooner rather than later.
> <u>We have all the documents. We've shared them with anyone who's
> requested them. We have no problem if they request now sharing
> those documents as well.</u>

<u>Morgulas Declaration</u>, Exhibit 5 (Transcript of May 7 Hearing), at pg. 19, ll. 10-19. Apparently, however, when Debtor's counsel stated that he didn't have a "problem…sharing" the produced documents with "anyone," what he actually meant was that he didn't have a problem sharing them with anyone that IDB and the Investors determined to be unlikely to take an active role and interest. Indeed, any other conclusion would be inconsistent with the continued refusal of the Debtor to honor the repeated and proper requests of North Mill and other parties for such documents.

Unfortunately, the problem isn't limited to the Debtor or to the documents and information produced to date by the Investors. For almost one month, the Debtor, IDB, and the Investors have refused North Mill's requests for copies of the documents and information that

have been produced in connection with the Bankruptcy Rule 2004 examinations of both IDB and the Investors. IDB, Dell, the Prime Plus Entities, Stephens, the Oasis Entities, and the Debtor have consistently and affirmatively ring-fenced North Mill and others (*e.g.,* Medallion Financial Group and related entities (collectively, the "**Medallion Entities**")) out of participating in the examination process with respect to both IDB and the Investors.

In doing so, these parties are affirmatively and knowingly violating this Court's orders with respect to such examinations, which orders clearly and unambiguously provide that any party in interest in this Chapter 11 Case may, upon request and agreement to be bound by the terms of the protective order relevant thereto, both receive copies of all of the documents and information produced and attend the oral examination of IDB and each of the Investors. When North Mill explicitly raised such issues with the parties, it was suggested by more than 1 of them that <u>North Mill</u> must first obtain an order of this Court if it desired to participate in such examinations. None, however, could explain why <u>North Mill</u> (and not one or all of the parties refusing to abide by the terms of valid and enforceable Court orders) should be required to expend its valuable time and resources seeking and obtaining an order of this Court which would effectively simply affirm the continuing validity of prior, final orders of this Court.

The gross abuses of the Bankruptcy Rule 2004 process by IDB, the Debtor, and the Investors are made abundantly clear by the disparate treatment of and responses to North Mill's request to participate in the EisnerAmper examination and North Mill's request to participate in the examinations of IDB and the Investors. This Court's orders authorizing (and the protective orders regarding the use of materials elicited in connection with) the examinations of EisnerAmper, IDB, and the Investors are substantively identical with respect to the right of any party in interest to participate. Despite the fact that the rules, the players, and North Mill's

requests are undifferentiated, North Mill received <u>no</u> objection to its request with respect to the examination of EisnerAmper and <u>universal</u> objection to its request with respect to examinations of IDB and the Investors.  Apparently, the Debtor, IDB, and the Investors mistakenly believe that being permitted to organize and administer such examinations came with an unfettered right to selectively ignore the terms and conditions attendant with such Court-ordered authority.

Given the manner in which the examinations have been handled by the Debtor, IDB, and the Investors, there can be no question that their continued pursuit of the same will only inure to their collective benefit and at the expense of the Debtor's estate.  Accordingly, while North Mill will seek redress in connection with the misconduct of the Debtor, IDB and the Investors in a separate motion to be put before this Court in short order, it respectfully suggests that the record strongly supports a denial of the authorization sought by IDB in the Motion to conduct additional and further examinations of third parties pursuant to Bankruptcy Rule 2004.

## <u>FACTUAL BACKGROUND</u>

### <u>CHAPTER 11 CASE</u>

1.      On April 29, 2013 (the "Petition Date"), IDB and certain other petitioning creditors filed an involuntary petition under Chapter 7 of the title 11 of the United States Code (11 U.S.C. §§ 101 to 1524 (the "**Bankruptcy Code**")) against Oak Rock.

2.      On May 5, 2013, Oak Rock filed a motion to convert the involuntary Chapter 7 case to a case under Chapter 11 of the Bankruptcy Code.

3.      On May 6, 2013, the Court entered an Order converting the involuntary Chapter 7 case to a case under Chapter 11 of the Bankruptcy Code.  The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code §§ 407(a) and 1108.

4.      On May 27, 2014, the Office of the United States Trustee ("**US Trustee**") appointed a Committee in the Debtor's Chapter 11 Case.  See Docket No. 573.

## AUTHORIZED 2004 EXAMINATIONS

- **EisnerAmper, LLP**

5.      On or about June 11, 2013, Prime Plus filed the "*Ex Parte* Motion Of Prime Plus Acquisition Corp. For Entry Of An Order Pursuant To Bankruptcy Rule 2004 Authorizing The Issuance Of Subpoenas For The Production Of Documents And Taking Of Testimony Of EisnerAmper, LLP" [Docket No. 206] ("**PPA Eisner 2004 Motion**").

6.      On or about June 17, 2013, IDB filed the "Motion Of Israel Discount Bank Of New York For An Order Pursuant To Federal Rule Of Bankruptcy Procedure 2004 Authorizing The Issuance Of Subpoenas For The Production Of Documents And Taking Of Testimony From EisnerAmper LLP" [Docket No. 221] ("**IDB Eisner 2004 Motion**").  On or about June 25, 2013, the Debtor filed a joinder to the IDB Eisner 2004 Motion [Docket Nos. 236].

7.      At a hearing held on June 27, 2013, the Court orally granted the relief requested in the PPA Eisner 2004 Motion and the IDB Eisner 2004 Motion.

8.      On July 3, 2013, the Debtor filed a "Notice of Settlement and Order" with respect to the PPA Eisner 2004 Motion and the IDB Eisner 2004 Motion [Docket No. 264], which the Court approved by Order dated July 15, 2013 [Docket No. 281] ("**Eisner 2004 Order**").

9.      On or about August 16, 2013, EisnerAmper, LLP ("**EisnerAmper**"), the Debtor, Prime Plus and IDB executed a "Stipulated Protective Order" with respect to the documents to be produced by and oral examination of EisnerAmper, LLP ("**Eisner Stipulated**

**Protective Order**"). On August 21, 2013, the Court entered an Order [Docket No. 345] approving the terms and conditions of the Eisner Stipulated Protective Order.

10. Annexed to the Eisner Stipulated Protective Order is a "Supplement to the Stipulated Protective Order," which is to be executed by any person or entity that is not a party to the Eisner Stipulated Protective Order but that otherwise agrees to be bound by the terms and conditions thereof. The execution of the Supplement was a precondition to the delivery of the documents produced by EisnerAmper, LLP to any party that was not a party to the Eisner Stipulated Protective Order. North Mill executed and delivered the required Supplement to all affected parties ("**North Mill Executed Supplement to Eisner PO**").

11. Thereafter, EisnerAmper, LLP produced documents, copies of which documents were provided, <u>without objection</u>, to North Mill as a result of North Mill's execution of the North Mill Executed Supplement to Eisner PO.

12. The oral examination of EisnerAmper, LLP was originally noticed for December 12, 2013, and adjourned by agreement to February 6, 2014. The parties could not thereafter agree on an acceptable date to further adjourn the oral examination of EisnerAmper, LLP, which resulted in Debtor filing a motion to compel on or about January 31, 2014 [Docket No. 517]. Before a hearing thereon took place, the parties resolved their dispute on the terms and conditions contained in the "Stipulation and Order By And Between The Debtor, Israel Discount Bank of New York, Prime Plus Acquisition Corp. And EisnerAmper, LLP Resolving The Motion to Compel Testimony of EisnerAmper, LLP" [Docket No. 523] ("**Eisner Oral Testimony Stipulation and Order**"). The Eisner Oral Testimony Stipulation and Order was approved by the Court on February 10, 2014 [Docket No. 524].

8

13.     The Eisner Oral Testimony Stipulation and Order provides, in pertinent part, as follows:

> 2. …The Debtor shall provide notice of the time and location of the examination by filing a notice on the court's ECF system.  <u>Any party in interest in this bankruptcy proceeding may attend the examination of EisnerAmper</u> and, subject to a time limitation for the completion of the examination of EisnerAmper agreed upon by the parties or ordered by the Court, without limiting the examinations of the Debtor, IDB, Prime Plus, (i) North Mill Capital LLC and ZFI Endowment Partners, L.P., and (ii) Medallion Bank and Medallion Financial Corp., may examine EisnerAmper after the Debtor, IDB and Prime Plus have completed their respective examinations.

(emphasis added).

14.     As provided in the Eisner Oral Testimony Stipulation and Order, North Mill attended and participated in the oral examination of the representative of EisnerAmper, LLP, which took place on March 20, 2014 and April 9, 2014.

- **John P. Murphy**

15.     On or about June 18, 2013, IDB filed the "Motion Of Israel Discount Bank Of New York For An Order Pursuant To Federal Rule Of Bankruptcy Procedure 2004 [Docket No. 226], pursuant to which IDB requested an order authorizing it to undertake an examination of John P. Murphy pursuant to Rule 2004 ("**IDB Murphy 2004 Motion**").  On or about June 25, 2013, the Debtor filed a joinder to the IDB Murphy 2004 Motion [Docket No. 235].

16.     At a hearing held in the Chapter 11 Case on June 27, 2013, the Court orally granted the relief requested in the IDB Murphy 2004 Motion.

17.     On July 15, 2013, the Debtor filed an "Amended Notice of Settlement and Order" [Docket No. 282] with respect to the IDB Murphy 2004 Motion.

18.     On July 30, 2013, the Court entered its Order granting the relief requested in the IDB Murphy 2004 Motion [Docket No. 303] ("**IDB Murphy 2004 Order**"), which provides, in pertinent part:

> 2.     …Promptly after receipt of any responsive documents, the Debtor shall provide copies of any such documents to counsel to IDB, and, <u>upon written request and at the expense of the requesting party, shall make available for inspection and copying any such documents to any other interested party who has filed a notice of appearance in this bankruptcy case</u>.

(emphasis added).

19.     Based upon information and belief, the examination of John P. Murphy pursuant to Fed. R. Bankr. P. 2004 has not yet been scheduled; however, Debtor's counsel has confirmed that the Debtor and its representatives have held at least three informal meetings with Mr. Murphy.  <u>See</u> Letter from Mr. Salvatore LaMonica Dated May 29, 2014, which is annexed as Exhibit "10" to the Morgulas Declaration.  <u>See</u>, <u>also</u>, Exhibit "5" to the Morgulas Declaration (Transcript (Chapter 11 Case) Dated May 7, 2014 ("**May 7 Hearing Transcript**")), at p. 15, ll. 13-17. [2]

20.     Other than to imply the Debtor is waiting for the newly formed Creditors' Committee to participate in the examination of Mr. Murphy pursuant to Bankruptcy Rule 2004, for which the Debtor was granted approval to proceed with almost a year ago, the Debtor has offered no reason why it has chosen to hold informal meetings rather than proceed expeditiously with such examination.

---

[2]     The cited portion of the May 7 Hearing Transcript provides:

> We've had two meetings with -- three meetings with Mr. Murphy to review some of the issues concerning the operations. We have not conducted his 2004. We're going to be working on that next. Okay. We're kind of waiting for the committee to participate in that if they wanted to participate.

- **Prime Plus Acquisitions Corp. and John E. Dell / Oasis Oak Rock Investors, LLC (and Related Entities) and Thomas C. Stephens**

21.    On or about August 9, 2013, IDB filed motions seeking an examination pursuant to Federal Rule of Bankruptcy Procedure as to: (a) Stephens, Oasis POS LLC, Oasis Capital Management, LLC and Oasis Oak Rock Investors, LLC [Docket No. 317] (the "**Stephens/Oasis 2004 Motion**"); and (b) Dell and Prime Plus Acquisition Corp. [Docket No. 318] (the "**Dell/Prime Plus 2004 Motion**").  On or about August 12, 2013 and August 13, 2013, respectively, the Debtor filed joinders to the Dell/Prime Plus 2004 Motion [Docket No. 321] and the Stephens/Oasis 2004 Motion [Docket No. 327].

22.    On or about September 3, 2013, North Mill and ZFI Endowment Partners, L.P. filed an objection to the relief requested in the Stephens/Oasis 2004 Motion and the Dell/Prime Plus 2004 Motion [Docket No. 373] ("North Mill 2004 Exam Objection"), pursuant to which they argued that, given certain pending litigation and the proposed subject matter of the Rule 2004 requests, the relief should not be granted or, alternatively, that they should be permitted to take part in the examinations.

23.    On September 24, 2013, a hearing was held with respect to the relief requested in the Stephens/Oasis 2004 Motion and the Dell/Prime Plus 2004 Motion ("**September 24 Hearing**").  At the September 24 Hearing, the following exchange took place regarding North Mill's request that if the relief requested in the Stephens/Oasis 2004 Motion and the Dell/Prime Plus 2004 Motion was granted, that North Mill be permitted to fully participate in the examination process:

> **MR. KINOIAN**: Your Honor, Gregory Kinoian, again, on behalf of North Mill and ZFI. We had filed an opposition to the motions requesting authority to issue the 2004 subpoenas or, in the alternative, that if Your Honor was inclined to grant it that the order provides that we be permitted to join

in the discovery. And so, therefore, my reading of Your Honor
is that you're prepared to grant those motions and we,
therefore, request that we be permitted to join in the orders
regarding the discovery of those being sought.

**THE COURT**: Do you have any objection to that?

**MS. CYGANOWSKI**[Counsel to IDB]: No, Your Honor, we're happy to
coordinate the taking of these examinations. We agree with you
wholeheartedly that in the interest of trying to be more
economical, we'll try to work with folks to get a date so that
Mr. Dell, Mr. Stephens, and the other parties are deposed one
time. And whoever is there, you know, may also make inquiry.

Morgulas Declaration, Exhibit 1 ("**September 24 Hearing Transcript**"), at p. 82, l: 17 – p. 83, l: 7.

24.     On October 17, 2013, the Court entered its "Order Granting Motions of Israel Discount Bank of New York, Joined By The Debtor And Certain Other Interested Parties, Pursuant to Federal Rule of Bankruptcy Procedure 2004 Authorizing The Issuance Of Subpoenas For The Production Of Documents And Taking of Testimony From John E. Dell, Prime Plus Acquisition Corp., Thomas C. Stephens, Oasis POS LLC, Oasis Capital Management, LLC And Oasis Oak Rock Investors, LLC" [Docket No. 465] ("**Dell/Prime Plus/Stephens/Oasis 2004 Order**")

25.     In keeping with the above-cited representations of counsel to IDB at the September 24 Hearing, the Dell/Prime Plus/Stephens/Oasis 2004 Order provides, in pertinent part, as follows:

5.     …The Debtor shall provide notice of the time and location of such depositions by filing a notice on the Court's ECF system. Any party in interest in this bankruptcy case may attend the examinations of Stephens/Oasis and Dell/Prime Plus and may examine the witnesses after the Debtor and IDB have completed their respective examinations.

6.      All parties in interest in this bankruptcy case may, upon reasonable notice, request that they be provided with copies of any documents produced by Stephens/Oasis and/or Dell/Prime Plus (the "Producing Parties"). Any such request shall be directed to the Producing Parties who will produce such copies to the requesting party provided that such requesting parties reimburse the Producing Parties for any reasonable costs incurred by the Producing Parties in preparing and/or transmitting copies of such documents, and provided that such requesting parties first execute and agree to be bound by the protective order to be entered with respect to the confidential and proprietary documents of Stephens/Oasis and/or Dell/Prime Plus.

(emphasis added).

- **IDB**

26.      In resolution of the dispute between IDB and the Investors regarding the "Motion of Prime Plus Acquisition Corp. for the Appointment of an Examiner" [Docket No. 370], in which the other Investors joined, it was agreed that the Investors would be permitted to take the oral examination of and request documents from IDB.  This agreement was formalized and presented to the Court as a Consent Order, which was filed on or about November 11, 2013 [Docket No. 482] ("**IDB 2004 Consent Order**").

27.      The IDB 2004 Consent Order is substantially similar to the Dell/Prime Plus/Stephens/Oasis 2004 Order, and it was approved by the Court on November 26, 2013 [Docket No. 494].

28.     The IDB 2004 Consent Order provides, in pertinent part, as follows:

5.      …Prime Plus and Dell, after coordinating the date and time with the Debtor, shall provide notice of the time and location of such depositions by filing a notice on the Court's ECF system. <u>Any party in interest in this bankruptcy case may attend the examinations of IDB and may examine the witnesses after Prime Plus, Dell and the Debtor have completed their examination.</u>

6.      <u>All parties in interest in this bankruptcy case may, upon reasonable notice, request that they (the "Requesting Parties") be provided with copies of any documents produced by IDB.</u> Any such request shall be directed to IDB who will produce such copies to the Requesting Parties provided that such Requesting Parties reimburse IDB for any reasonable costs incurred by IDB in preparing and/or transmitting copies of such documents, and <u>provided that such Requesting Parties first execute and agree to be bound by the protective order to be entered with respect to the confidential and proprietary documents of IDB</u>.

(emphasis added).

29.     In connection with the authorized examinations of IDB and the Investors, the parties negotiated a form of protective order, as contemplated by paragraph 6 of both the IDB 2004 Consent Order and the Dell/Prime Plus/Stephens/Oasis 2004 Order.   The proposed protective order was filed on November 19, 2013, by the Debtor [Docket No. 487] ("**<u>IDB/Dell/Prime Plus/Stephens/Oasis Protective Order</u>**").   Importantly, neither the Notice of nor the IDB/Dell/PrimePlus/Stephens/Oasis Protective Order purports to amend, supersede or otherwise limit the rights granted by the Court to all parties in interest in the Debtor's Chapter 11 Case pursuant to the Dell/Prime Plus/Stephens/Oasis 2004 Order or the IDB 2004 Order.

30.     The IDB/Dell/Prime Plus/Stephens/Oasis Protective Order was approved by Order of this Court dated December 2, 2013 [Docket No. 496].

31.     Annexed to the IDB/Dell/Prime Plus/Stephens/Oasis Protective Order is a "Supplement to the Stipulated Protective Order," which is to be executed by any person or entity

that is not a party to the IDB/Dell/Prime Plus/Stephens/Oasis Protective Order but that otherwise

agrees to the terms and conditions of the IDB/Dell/Prime Plus/Stephens/Oasis Protective Order.

As provided in the Morgulas Declaration, North Mill executed and delivered a copy of the

Supplement to the Stipulated Protective Order to all of the directly affected parties.

- **Christopher Murphy**

32.     On or about November 11, 2013, the Debtor filed the "Motion of Debtor

Seeking The Entry Of An Order, Pursuant to Rule 2004 Of the Federal Rules Of Bankruptcy

Procedure, Authorizing The Issuance Of A Subpoena For The Production Of Documents And

Taking The Testimony of Christopher Murphy" [Docket No. 480] ("**Debtor C. Murphy 2004**

**Motion**"). Joinders to the Debtor C. Murphy 2004 Motion were filed by Prime Plus Acquisition

Corp. [Docket No. 500] and Oasis Oak Rock Investors, LLC [Docket No. 501] on or about

December 10, 2013.

33.     A hearing was held on the Debtor C. Murphy 2004 Motion and the Court

entered an order thereon on December 18, 2013 [Docket No. 506].  On December 23, 2013, an

"Amended Order" was entered with respect to the Debtor C. Murphy 2004 Motion [Docket No.

510] ("**Amended C. Murphy 2004 Order**").

34.     The Amended C. Murphy 2004 Order provides, in relevant part:

> 4. The Debtor shall provide notice of the time and location
> of such deposition by filing a notice on the Court's ECF
> system. Any party in interest in this bankruptcy case may
> attend the examination of the Witness and may examine the
> Witness after the Debtor, and thereafter Prime Plus and
> Oasis, have completed their examinations.
>
> 5. All parties in interest in this bankruptcy case may, upon
> reasonable notice, request that they be provided with copies
> of any documents produced by the Witness. Any such
> request shall be directed to the Witness, who will produce
> such copies to the requesting party provided that such

> requesting parties reimburse the Witness for any reasonable costs incurred by the Witness in preparing and/or transmitting copies of such document, and <u>provided that such requesting parties first execute and agree to be bound by the protective order, if any is entered into by the Debtor, Prime Plus, Oasis and the Witness, with respect to the confidential and proprietary documents of the Witness</u>.

(emphasis added).

35.     Based upon information and belief, there have been no documents produced by or oral testimony requested from Christopher Murphy pursuant to the Amended C. Murphy Order.

- **Certain Of Debtor's Borrowers**

36.     On or about December 2, 2013, IDB filed the "Motion of Israel Discount Bank of New York for an Order, Pursuant to Federal Rule of Bankruptcy Procedure 2004, Compelling the Production of Documents and Testimony From Certain of the Debtors Borrowers" [Docket No. 497] ("**First IDB Borrower 2004 Motion**").

37.     A hearing was held on the First IDB Borrower 2004 Motion on December 17, 2013, and the Court entered an order thereon on December 18, 2013 [Docket No. 507] ("**First IDB Borrower 2004 Order**").

38.     The First IDB Borrower 2004 Order provides, in pertinent part:

> 2.     … IDB shall provide notice of the time and location of such depositions by filing a notice on the Court's ECF system. <u>Any party in interest in this bankruptcy case may attend the examinations of the Subpoena Recipients and may examine the witnesses after IDB has completed its examinations</u>.
>
> 3.     <u>All parties in interest in this bankruptcy case may, upon reasonable notice, request that they be provided with copies of any documents produced by the Subpoena Recipients</u>. Any such request shall be directed to the Subpoena Recipients who will produce such copies to the requesting party provided that such requesting parties

> reimburse the Subpoena Recipients for any reasonable costs incurred by the Subpoena Recipients in preparing and/or transmitting copies of such documents, and provided that such requesting parties first execute and agree to be bound by the protective order to be entered with respect to the confidential and proprietary documents of the Subpoena Recipients.

(emphasis added).

       39.     The docket does not reflect that any protective order (such as that referred to in paragraph 3 of the First IDB Borrower Order) was entered with respect to the documents subpoenaed pursuant to the First IDB Borrower 2004 Order.  Further, there has been nothing filed on the docket reflecting that any depositions have been scheduled.  However, the Motion presently before the Court indicates that certain documents have been received by IDB as a result of the subpoenas issued pursuant to the First IDB Borrower 2004 Order.

## REFUSAL OF IDB, DEBTOR AND INVESTORS TO ALLOW NORTH MILL TO PARTICIPATE IN AUTHORIZED EXAMINATIONS OF IDB AND/OR INVESTORS

       40.     As previously indicated herein above, at the recent May 7 Hearing, Mr. LaMonica represented to the Court that:

> …We have received a continued production of documents from Dell and -- Jack Dell, who's one of the managing directors, and Prime Plus and Mr. Stephens and his company, Oasis. The last production was on April 24th and on April 17th. We believe there's going to be one more production by the individuals, and I'm going to be pushing to schedule those 2004s, so we can get them done sooner rather than later. We have all the documents. We've shared them with anyone who's requested them. We have no problem if they request now sharing those documents as well.

Morgulas Declaration, Exhibit 5, at p. 19 at ll. 10-19.

       41.     On May 12, 2014, counsel to North Mill sent a letter ("**May 12 Letter**") to counsel for each of the Debtor, IDB, and the Investors, formally requesting copies of the

documents and information produced: (a) to the Debtor and IDB by the Investors (and referenced by Mr. LaMonica at the May 7 Hearing), and (b) produced to the Investors by IDB.  See Morgulas Declaration, Exhibit 6 (May 12 Letter).  As required by the Dell/Prime Plus/Stephens/Oasis 2004 Order and the IDB 2004 Consent Order, North Mill's counsel confirmed that any production would be subject to the terms and conditions of the IDB/Dell/Prime Plus/Stephens/Oasis Protective Order.  Id. at ¶ 16.

42.    Counsel to North Mill thereafter followed through on its request on several occasions with counsel to certain of the Investors.  See Morgulas Declaration, ¶¶ 20-21.  On May 21, 2014, counsel to Prime Plus informed North Mill's counsel that, despite the clear and unambiguous language of the Dell/Prime Plus/Stephens/Oasis 2004 Order and the IDB 2004 Consent Order regarding the right of any party in interest to receive copies of documents and information  produced pursuant thereto, North Mill would have to seek authorization of counsel to IDB before any documents produced by any party could be provided to North Mill.  Id., at ¶ 22.

43.    Thereafter, North Mill's counsel contacted counsel to IDB and requested that IDB either consent to counsel to Prime Plus providing copies of all of the documents and information produced to date pursuant to the Dell/Prime Plus/Stephens/Oasis 2004 Order and the IDB 2004 Consent Order or that IDB provide copies of documents and information it had produced directly to North Mill and leave production of the remainder of the documents and information to the Investors.  Morgulas Declaration, at ¶¶ 23-25.

44.    Counsel to IDB, however, chose neither option and instead informed North Mill that North Mill was not entitled to any documents produced by IDB to any of the Investors given that IDB's production to the Investors was expressly conditions upon the

agreement of such parties not to provide copies of any documents or information produced by IDB to North Mill or any other participant in a loan made by the Debtor in the prepetition period. <u>Morgulas Declaration</u>, at ¶¶ 23-25.

45.     Counsel to North Mill responded by requesting that IDB re-consider its position given that North Mill had complied with the terms and conditions of the IDB 2004 Consent Order and that there was no legal or factual basis for IDB to take such a position absent seeking and obtaining further relief regarding its obligations under the IDB 2004 Consent Order from this Court.  IDB's counsel, however, has chosen not to respond to such request.  <u>Morgulas Declaration</u>, at ¶ 26.

46. In an effort to resolve the stalemate, on May 22, 2014, counsel to North Mill sent a letter to Debtor's counsel (with a copy to counsel for each of the Investors) reiterating North Mill's request.  On May 30, 2014, Debtor's counsel responded by refusing to provide the properly requested documents based on the illogical contention that the terms and conditions of the IDB/Dell/Prime Plus/Stephens/Oasis Protective Order prevented the Debtor from the requested documents and information to North Mill or any other "third party."  Debtor's counsel also disingenuously suggested that North Mill:

> … contact counsel and attempt to work out a mutually acceptable arrangement to provide you with the requested documents and information. Alternatively, <u>you might consider seeking the Court's intervention</u>, which will certainly bring this issue to a resolution. Unfortunately, <u>without the consent of the producing parties or an Order of the Court</u>, I cannot, and will not, provide you with the requested documents.

<u>Morgulas Declaration</u>, at ¶¶ 27-30.

47.     Prior to filing the Opposition, on June 10, 2014, North Mill's counsel sent an e-mail to counsel to each of IDB, the Debtor, and the Investors, issuing North Mill's final request that the parties reconsider their unfounded refusal to provide North Mill with the

documents and information North Mill had been requesting for over a month and after complying in full with the terms and conditions of this Court's orders.  Morgulas Declaration, at ¶¶ 31-32.

48.    In response, counsel to certain of the Investors stated that North Mill had no right to participate in the examination process on the unfounded theory that this Court's prior order granting partial summary judgment to North Mill somehow deprived North Mill of the rights granted to it in the Dell/Prime Plus/Stephens/Oasis 2004 Order and the IDB 2004 Consent Order.  Morgulas Declaration, at ¶¶ 33-35.

## ARGUMENT

49.    The intent of a Bankruptcy Rule 2004 examination is to permit the trustee and other parties in interest to explore any matter that may affect the administration of the debtor's estate.  Bankruptcy Rule 2004 examinations are designed for the "purpose of discovering assets and unearthing frauds" "and have been compared to a 'fishing expedition.'" In re Table Talk, Inc. 51 B.R. 143, (Bankr. D. Mass. 1985) (quoting In re GHR Energy Corp., 33 B.R. 451, 453-454 (Bankr. D. Mass. 1983)).

50.    There are, of course, limits to a Bankruptcy Rule 2004 examination.  It is not to be used to harass or to "stray into matters which are not relevant to the basic inquiry."  In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D.Wis. 1984).  Further, an examination under Bankruptcy Rule 2004 is not a substitute for discovery under Rule 26 of the Federal Rules of Civil Procedure. In re 2435 Plainfield Ave., Inc., 233 B.R. 440, 455 (Bankr. D.N.J. 1998).

51.    Importantly, however, the mere existence of a pending adversary proceeding does not place a blanket prohibition on conducting or participating in a Bankruptcy Rule 2004 examination.   While a Bankruptcy Rule 2004 examination may not be used in

connection with "(1) entities affected by the pending adversary proceeding(s) and (2) issues addressed in its pending adversary proceeding(s)…a creditor may conduct Rule 2004 examinations regarding issues in addition to or beyond the scope of its pending adversary proceeding." In re Buick, 174 B.R. 299, 306 (Bankr. D. Colo.1994).

52.     Without question, each of the authorized Bankruptcy Rule 2004 examinations has the potential to elicit documents and testimony that may prove integral to the discovery of property of and/or potential claims and causes of action belonging to the Debtor's estate.  Given the potential import of the information to be learned from such examinations and the strong public policy favoring transparency in bankruptcy proceedings, it is not surprising that the Court's orders with respect to the Bankruptcy Rule 2004 examinations authorized to date, as excerpted herein above, explicitly provide that any party in interest in the Chapter 11 Case may participate in and receive copies of documents produced in connection with such examinations.

53.     Given the recognized limitations imposed on the permissible scope and use of information gained through Bankruptcy Rule 2004 examinations, as well as the requirement imposed by this Court's orders that any party desiring to participate must agree to the terms and conditions of an appropriate protective order, there is no threat that the participation of North Mill or any other party in interest that is presently a party to an adversary proceeding may result in harm or prejudice.  Indeed, if the same were true then IDB, which is a party to several adversary proceedings, should not be involved in any of the Bankruptcy Rule 2004 examinations.

54.     IDB's refusal to comply with this Court's orders is inexcusable regardless of its alleged reasons.  However, IDB's actions are particularly egregious given that its only stated reason for doing so is its baseless and insincere concern that North Mill may try and use

the documents and information for an "improper purpose".   Such arguments and actions should be seen for what they really are – a desperate attempt by IDB to prevent competent and involved parties in interest from participating in a process that may result in the identification of significant claims and causes of action against IDB.

55.     Finally, as implicitly recognized by this Court's orders, the extent and scope of a party's ability to participate should not be determined by the ability of such party to pursue an action against on behalf of or the ultimate right of such party to recover from the Debtor's estate.   Further, there can be no question, as some of the parties have disingenuously contended, that North Mill is a "party in interest" as such term is used in the Court's orders and employed in Bankruptcy Rule 2004.

56.     While Bankruptcy Rule 2004 does not define the term "party in interest, " Section 1109 of the Bankruptcy Code refers to "party in interest" for purposes of the right to be heard in a Chapter 11 case.   See In re Summit Corp., 891 F.2d 1 (1st Cir. 1989) (referring to Section 1109 for determining what constitutes a "party in interest" under Rule 2004 and stating that "party in interest" is construed liberally); see also In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985) (stating that "party in interest" under Bankruptcy Code section 1109 is to be construed liberally).   Bankruptcy Code section 1109 provides an exemplary, but not all-inclusive, list of parties in interest, which list includes: "the debtor, the trustee, a creditor's committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee . . .."

57.     Unless and until North Mill obtains a final, non-appealable order of this Court granting North Mill the relief it has sought in full, there is little question that North Mill

qualifies as a "party in interest" for purposes of Bankruptcy Rule 2004 and this Court's prior orders regarding the Bankruptcy Rule 2004 examinations of IDB and the Investors.

## CONCLUSION

58.     The examinations of IDB, the Prime Plus Entities, and the Oasis Entities may well result in the discovery of critical information with respect to lucrative and viable claims and causes of action that could be pursued for the benefit of the Debtor's estate and creditors.  A thorough investigation of such potential claims is warranted and justified given the key role that each of the entities to be examined played in the Debtor's operations.  Accordingly, the actions taken by IDB and the other potentially affected parties to prevent North Mill from participating in such investigation were not only antithetical to the policies and purposes underlying Bankruptcy Rule and 2004 but also violative of this Court's prior orders.

59.     Accordingly, given the misconduct of IDB and the Debtor with respect to the administration of the authorized examinations, there is simply no justification for granting IDB the right to pursue any additional examinations pursuant to Bankruptcy Rule 2004.  The relief requested in the Motion should, therefore, be denied in its entirety.

**WHEREFORE**, for all of the foregoing reasons, North Mill respectfully requests that the Court enter an order denying the Motion and providing for any additional relief that this Court may deem just and proper.

Dated: Fort Lee, New Jersey
      June 11, 2014

                                **OKIN, HOLLANDER & DeLUCA, L.L.P.**,
                                Attorneys for North Mill Capital LLC

                          By: */s/ Gregory S. Kinoian*
                                Paul S. Hollander, Esq.
                                Gregory S. Kinoian, Esq. (GK-7386)
                                Margreta M. Morgulas, Esq.
                                One Parker Plaza, 12th Floor
                                400 Kelby Street
                                Fort Lee, NJ 07024
                                Tel:    (201) 947-7500
                                Fax:    (201) 947-2663