Hearing Date:  October 7, 2015 at 1:30 p.m. (prevailing Eastern Time)
Objection Deadline:  September 30, 2015 at 5:00 p.m. (prevailing Eastern Time)

Schuyler G. Carroll
John D. Penn
David F. Olsky
**PERKINS COIE LLP**
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
Telephone: 212.262.6900
Facsimile: 212.977.1649
SCarroll@perkinscoie.com
JPenn@perkinscoie.com
DOlsky@perkinscoie.com

Attorneys for the Official Committee of
Unsecured Creditors

---------------------------------------------------------X
In re:                                                  :        Chapter No. 11
                                                        :
OAK ROCK FINANCIAL, LLC,                                :        Case No. 8-13-72251-REG
                                                        :
         Debtor                                         :
                                                        :
---------------------------------------------------------X

### COMMITTEE'S RESPONSE TO OMNIBUS OBJECTION TO PROOFS OF CLAIM NOS.  7–10, 12–15, 19, 22–23, 25–62, 64–68, AND 70–72

The Official Committee of Unsecured Creditors (the "**Committee**"), by and through its undersigned counsel, hereby files this Response to the *Omnibus Objection to Proofs of Claim Nos. 7–10, 12–15, 19, 22–23, 25–62, 64–68, AND 70–72* ("**Objection**") filed by Israel Discount Bank of New York, as Agent ( "**IDB**").  In support of its Response, the Committee states as follows:

### PRELIMINARY STATEMENT

1.    As IDB admits, the Objection is a direct attack on the Committee, the Committee's composition, and the Committee's litigation against IDB:

> It should be noted that it is IDB's position that such service by Baker, indeed such service by any party seeking to exclude property from the Debtor's estate, should preclude their continued service on the Committee, and IDB and the Lenders reserve their

>rights to bring a motion with respect to the current composition of the Committee."[1]

2. Facing a back door challenge to its composition and its role in this case, the Committee responds to the Objection in its own right and not on behalf of any claimant identified therein (a "Claimant" or, collectively, "Claimants").[2] Each Claimant will still be required to prove that the claim it asserts should be allowed as against the Debtor's bankruptcy estate.

3. Neither of the two primary arguments in IDB's objection have merit. The first is that Claimants are barred from asserting claims by virtue of their prior statements *in response to IDB's arguments* regarding their participation agreements. The second is that Claimants can either assert ownership of a participation interest or assert a claim against the Debtor's estate, but not both.

4. IDB's assertions and arguments regarding the preclusive effect of the Claimants' prior statements are disingenuous, given that IDB of course is now itself taking the exact opposite position. If IDB applied the standards it now espouses to the statements it made in prior claims litigation, the Objection would fail because it fails to state a claim upon which relief can be granted.

5. Indeed, as IDB admits, it succeeded in its earlier arguments before this Court. *See* Obj. ¶ 26, p. 24 ("[A]ll other parties [except North Mill and Medallion] which had sought such status were not 'true' participants. Rather, they were lenders (and hence creditors) of the

---

[1] Footnote 5, page 25. How statements made by a Claimant before the final summary judgment was granted in IDB's favor is relevant to any issue before the Court currently or in the future is a mystery. Also, Baker does not serve on the Committee.

[2] The Committee also notes that there are a number of other Claimants whose claims are not addressed in IDB's Objection, and those creditors' claims remain "deemed allowed" at this time. These claims include the proofs of claim filed by various trade creditors.

Debtor."). For the Claimants who either did not appeal, or those who dismissed their appeal to this Court's initial summary judgment, the determination that those Claimants "were lenders (and hence creditors) of the Debtor" is a final adjudication that is binding on IDB and others. That determination was not challenged and therefore, cannot now be attacked by IDB.

6. IDB cannot collaterally attack those final judgments and IDB is judicially estopped from taking a different position (the opposite of its prior position) to the detriment of the Claimants.

7. IDB's assertion that a holder of a true participation with the Debtor cannot be a Claimant is simply wrong. *E.g.*, Obj., ¶ 2, p. 3 (asserting that "the black-letter law, and law of this case, is that a true participant's recourse is solely to the loan or loans in which the true participant participated, not the Debtor or its estate."). It certainly is not "law of the case." This Court held that the participations purchased by Medallion, North Mill are non-recourse and the District Court held that ZFI's participation was non-recourse. Neither this Court nor the District Court issued a broad ruling on the merits regarding all claims based on all participation agreements.

8. Further, IDB's Objection is largely premised on selective quotations included in certain proofs of claim filed with the Court. Proofs of claim, however, may be amended and supplemented. In fact, it is well recognized that amendments are freely permitted to cure a defect, to describe the claim with greater particularity, or to include a new theory of recovery based on the facts and documents initially set forth. Many would have been effectively amended by virtue of other pleadings filed in litigation in this Court.

9. IDB's Objection wholly ignores the counterclaims and cross-actions filed by various Claimants to assert additional bases for claims against the Debtor. Those pleadings, filed

with this Court and asserting claims against the Debtor, appear to satisfy the requirements to be considered as informal proofs of claim that would have amended the proofs of claim already on file.

10. IDB's Objection also glosses over both actions by the Debtor and its principals that would create recourse obligations under express terms of the common participation agreements. Those common participation agreements impose liability for breaches of the agreements and malfeasance.

11. IDB's Objection fails because it fails to recognize that 11 U.S.C. § 1111 can convert otherwise non-recourse obligations into recourse claims in bankruptcy cases.

12. IDB's actions and admissions after filing its Objection provide additional bases for this Court to reject and deny its Objection.[3]

### I. **IDB May Not Collaterally Attack The Judgments It Obtained.**

13. IDB obtained judgments against James Agals, David Schellhardt, Robert Baker, Vincent Salvatore, and Christopher Dowd[4] that were either not contested or not appealed. Those judgments conclusively determined that these individuals hold unsecured loans, not true participations.

14. Having obtained these judgments, IDB does not provide any basis on which it may collaterally attack them through the claims process. *See Bell v. Eastman Kodak Co.*, 214

---

[3]The Committee reserves the right to adopt additional arguments asserted by any Claimant in response to the Objection.

[4]Contrary to the information in footnote 5 of the Objection, Vincent and Katherine Salvatore were defendants in Adv. Pro. No. 8-13-08155 and Christopher Dowd (as the custodian for a number of his children) was a defendant in Adv. Pro. No. 8-13-08156 where the summary judgment requested by IDB was granted and no appeal was taken in either adversary proceeding.

F.3d 798, 800-01 (7th Cir. 2000) ("[C]ollateral attack, especially in civil cases, is disfavored because of the social interest in expedition and finality in litigation. A collateral attack on a final judgment is not a permissible substitute for appealing the judgment within the time, standardly 30 days, for appealing the judgment of a federal district court.").

## II. The Objection Is Barred by the Doctrine of Judicial Estoppel.

15. IDB's Objection violates the doctrine of "judicial estoppel." IDB took a position (that the Claimants were creditors, not true participants), prevailed on that position after extensive and expensive litigation, won more than one final adjudication based on that position and now improperly collaterally attacks the very determination that it spent months and caused hundreds of thousands of dollars in legal fees to be incurred in the process.

16. Notably, the Objection includes the Agals, Baker and Schellhardt claims yet never mentions nor provides any basis for any relief with respect to the final judgments involving each of those claims. The Objection also never articulates a basis to support any argument that those judgments are not preclusive with respect to its Objection.

17. The principle of judicial estoppel has been recognized by both the United States Supreme Court and the Second Circuit Court of Appeals.[5]

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel,

---

[5] *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 119-20 (2d Cir. 2014).

> "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."
>
> *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808 (2001).
>
> A different ruling would threaten the integrity of the bankruptcy process by encouraging parties to alter their positions as to ownership of assets as they deem their litigation needs to change, leaving courts to unravel previously closed proceedings. Doing so would allow parties an opportunity to "play [ ] fast and loose" with the requirements of the bankruptcy process and inject an unacceptable level of uncertainty into its results—exactly the result that the doctrine of judicial estoppel is intended to avoid. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000); accord *In re Adelphia Recovery Trust*, 634 F.3d at 696 (integrity of judicial process threatened by *120 parties taking a short term position that risks being inconsistent with its future position, not only by "knowingly [lying]").*Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 119-20 (2d Cir. 2014).

18.     Remarkably, IDB cites to purported "admissions" by Claimants and adjudications by this Court and the District Court as being inconsistent with the Claimants' present position.[6] However, if the standard IDB espouses is applied to IDB, its prior statement would preclude it from asserting the Objection in the first place.

19.     The record is replete with IDB's prior statements that Oak Rock's obligations to Claimants are recourse obligations rather than non-recourse obligations (which is the one reason

---

[6]"Here, by their own admission, and as confirmed by this Court and the District Court, the Participant Claimants have no right to payment from this estate because their respective property interests in the Debtor's loans are not part of this estate and the Participant Claimants' recourse is limited solely to the Debtor's loans and loan proceeds." Objection, ¶ 32, p. 29.

- 7 -

why the District Court determined that many of the common participation agreements were ambiguous). This is consistent with the provision in many of the common participation agreements which provided that in certain circumstances, the obligations which were non-recourse would become recourse. More specifically, paragraph 5 of the common participation agreements provides, "Both parties hereto expressly understand and agree that no representations or warranties have been made with respect to the validity or adequacy of any collateral and that each party hereto has no recourse whatsoever to the other party ***excepting only for breach of this agreement, breach of trust or malfeasance***." (Emphasis supplied.)

20. To date, neither this Court nor the District Court has been called upon to determine the application of this provision. John Murphy, Oak Rock's former Chief Executive Officer, has been convicted and sentenced for fraud which harmed parties who purchased participations. Paragraph 5 of the common participation agreements makes it possible, if not quite likely, that breaches and malfeasance render the obligations under the common participation agreements recourse obligations – even if such obligations may have originally been non-recourse.

21. IDB, however, having taken the opposite position, and having forced dozens of litigants to expend years litigating with it, is estopped from asserting that these Claimants cannot hold claims against the Debtor's estate.

### III.    "Recourse" Determinations.

22. IDB mischaracterizes rulings by both this Court and the District Court. Specifically, IDB argues that, "both this Court and the District Court have held that one hallmark of a participation agreement is the lack of recourse to the lead lender." (Objection, ¶ 47, p. 33)

In fact, neither court made such a holding. IDB even mischaracterizes (calling it a holding) and misquotes what the District Court actually wrote in quoting a case.[7] With the exception of the ZFI participation agreement, the holding by the District Court was that the common participation agreements signed by the appealing Claimants were ambiguous in many respects (including with respect to the issue of recourse against Oak Rock) and that those ambiguities prevented a summary judgment.

23. Significantly, neither this Court nor the District Court held that a "true participant" could never have an allowed claim against the Debtor. That issue was never presented and doing so flies in the face of paragraph 5 of the common participation agreements which specifically provides participants with a potential for full recourse against the Debtor (just as a "bad boy guarantee" imposes recourse liability based on subsequent actions).

### IV.     Claimants Can be Both Creditors and True Participants.

24. The Claimants' positions are not binary – being either solely participations (with no claim against the Debtor's estate) or completely creditors (asserting no rights with respect to underlying loans to dealers). As noted above, the vast majority of the common participation agreements specifically provide for recourse in at least three situations, "breach of this agreement, breach of trust or malfeasance." The Debtor's former CEO, John Murphy, pled guilty and was sentenced to over 8 years. His punishment (both the length of imprisonment and

---

[7] In ¶ 30 of the Objection, IDB states that "Judge Feuerstein held that:" and then begins the quote with "The lead lender . . . ." IDB misleadingly omits the immediately preceding sentence from the *In re Sackman Mortgage Corp.* case (quoted by Judge Feuerstein) which said, "***In the typical participation***, the lead lender transfers to the participant not only the benefits to be received from a share in the underlying loan (i.e. a pro rata share in the principal and interest payments) but also the risk of the borrower's default." (Emphasis supplied) The excerpt speaks of *typical participations*, not the specific transactions at issue in *Sackman*. And certainly not the specific participation agreements at issue in the underlying adversary proceedings here. The qualifier "In the typical participation" was repeated by Judge Feuerstein on p. 35 of her opinion.

the amount set for restitution) was based on, in part, the losses likely to be suffered by IDB and the Claimants.

25. The record to date in the Committee's adversary proceeding[8] suggests there is evidence of such "breach of trust or malfeasance." In addition to his criminal conviction, Murphy has admitted under oath, for example, that he sold participations in certain overadvanced loans and made regular payments on those loans, without telling the participant about the overadvances. The Court may conclude that this conduct is a "breach of trust or malfeasance," and if so, the participant may have recourse against Oak Rock. Further, the undisputable cessation of payments under the common participation agreements easily fits within the parameters of a breach of the agreements. That appears to satisfy another of the conditions for treating the common participation agreements as recourse.

## V. Commingled Funds and 11 U.S.C. § 1111.

26. While some of the Debtor's underlying loans were sold, many of the loans to dealers continued to be serviced and collected by the bankruptcy estate with the proceeds being deposited into a "Cash Sweep" account. Over $15 million dollars is currently on deposit in this commingled account that IDB and the Claimants each assert rights upon. In its Objection, IDB does not propose to segregate the commingled fund or otherwise allocate any specific dollars to specific underlying Oak Rock loans. IDB also fails to identify dollars that might not be subject to an assertion that the funds are owned by the counterparty on any participation agreement.

27. This Court previously decided that U.C.C. § 9-309(3) provides for automatic perfection of participation interests without the need to file financing statements. As a result,

---

[8] Adv. Pro. No. 8-14-08231.

some Claimants assert that they have perfected interests in property that is claimed by the Debtor to be property of the estate. As such, they have rights under § 1111(b)(1)(A).[9]

28.   The recourse nature bestowed by § 1111(b)(1)(A) is not controversial:

> The plain meaning of § 1111(b)(1)(A) is clear and unambiguous. Section 1111(b)(1)(A) requires that claims secured by liens on property of the bankrupt estate be treated as recourse claims 'whether or not such holder has such recourse.' In other words, regardless of whether the holder of a claim has recourse under that claim, the § 502(b)(1) determination of allowance or disallowance should be made as if the claim is a recourse claim, so long as that claim is secured by a lien on estate property. The Court sees no room for interpretation in that text. There is one prerequisite: the claim is secured by a lien on property of the estate. If that prerequisite is satisfied, then the claim is treated as a recourse claim for making the § 502(b)(1) allowance or disallowance determination, regardless of whether the claimant actually has recourse on that claim."
> *B.R. Brookfield Commons No. 1, LLC v Valstone Asset Mgmt.* LLC, 2013 U.S. Dist. LEXIS 73855 (E.D. Wis. May 24, 2013).

Parties' ultimate rights in and to the commingled funds have yet to be determined and the Committee reserves all rights and remedies with respect thereto. It should be noted that bankruptcy courts are uniquely qualified and have a host of options for the resolution of multiple conflicting claims regarding commingled funds.

## VI.   Informal Proofs of Claim.

---

[9] Under 11 U.S.C. § 1111(b)(1)(A), "A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same **as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse**" unless certain other events occur during the bankruptcy case. (Emphasis supplied). Accordingly, under § 1111(b)(1)(A), the obligations which are secured under 9-309(3) are treated as recourse, regardless of whether or not they had recourse under the underlying participation agreement.

29. The Objection is notably silent with respect to other pleadings filed in this Court by the Claimants, including counterclaims and cross-actions that were filed in the adversary proceedings where IDB and the Debtor litigated against the Claimants. The counterclaims and cross-actions articulated in papers filed with the Court indicate an intention to hold the Debtor (and its estate) liable for obligations to the Claimant. In that regard, the counterclaims and cross-actions may be considered as "informal proofs of claim."

30. Informal proofs of claim are often recognized where there has been: (1) a written document (2) that contains a demand on the debtor/estate (3) which evinces an intent to hold debtor liable for the debt (4) that has been filed with the court and (5) it must be equitable to allow the amendment of the informal proof of claim. *In re Nowak*, 586 F.3d 450 (6th Cir. 2009). Informal proofs of claim have been recognized in the Second Circuit as well. *In re Operation Open City, Inc.*, 148 B.R. 184, 189 n. 5 (Bankr. S.D.N.Y. 1992).

31. Each Claimant either attached a copy of one or more participation agreements to their respective proofs of claim or referred to such documents in their proofs of claim and other pleadings. By attaching or referencing the participation agreements, the Claimants provided evidence from ¶ 5 of the common participation agreements (cited above) to support an assertion that they could simultaneously have claims against the Debtor's estate while also asserting to be a true participant.

32. The Objection should be denied because it fails to address (or even acknowledge the existence of) that the counterclaims and cross-actions may be recognized as informal amendments or supplements to the existing proofs of claim.

### VII.  Amendments to Proofs of Claim

33.     Even if the counterclaims and cross-actions are not deemed informal amendments or supplements to the existing proofs of claim, the Objection ignores a substantial body of case law that supports a claimant's ability to amend its proof of claim either as an amended proof of claim or through an informal proof of claim. The right to amend a proof of claim is normally freely given "where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim". *Biscayne 21 Condominiums Association, Inc. v South Atlantic Financial Corp. (In re South Atlantic Financial Corp.*), 767 F. 2d 814, 819 (11th Cir. 1985).

34.     Courts have allowed amendments to proofs of claim in a variety of situations. *See, e.g.*, *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999) (permitting amendment which added claim for conversion, increased monetary damages, and added punitive damages where additional claims and new theory were based on "exactly the same transactions alleged in the original complaint" which had been attached to the original proof of claim); *In re Black*, 460 B.R. 407 (Bankr. M.D. Pa. 2011) (creditor allowed to amend proof of claim to include negligence theories of recover even though original proof of claim only alleged intentional breach of contract because the subject state-court complaint had put debtor on fair notice about both theories); *In re Hemingway Transport, Inc*., 954 F.2d 1, 10 (1st Cir. 1992) (permitting amendment to proof of claim to include contingent indemnification claim where original proof of claim was based on, and included a copy of, a mortgage which explicitly provided it was subject to a specific lease which contained the indemnification clause); *Agassi v. Planet Hollywood Intern., Inc*., 269 B.R. 543, 549-50 (D. Del. 2001) (court found that because the plaintiffs had attached copies of their contracts to their proofs of claim, the failure of the plaintiffs to specifically assert their claims for indemnity against the debtor did not bar them

from subsequently asserting claims under the indemnification provisions in their contracts); *In re SemCrude, L.P.*, 443 B.R. 472 (Bankr. D. Del. 2011) (amendments to proof of claim for indemnity and breach of warranty permitted because those claims were explicit under agreements referenced in proof of claim).

35. Since each of the original proofs of claim attached (or referenced) the respective participation agreements, those Claimants should be afforded the opportunity to amend their proofs of claim (whether formally or informally) to plead additional theories of recovery based on the information and documents already included or referenced in their original proofs of claim.

### VIII. Subsequent Admissions by IDB.

36. On September 22, 2015, in Case No. 13-03939 pending in the U.S. District Court for the District of New Jersey in a case styled *U.S.A. v. Redstone Business Lenders, LLC*, the U.S. Small Business Administration, as Receiver for Redstone Business Lenders, LLC filed a motion seeking the approval of the sale to IDB of the Receiver's claim against Oak Rock (Docket No. 46) and the Declaration of Brian Stern (Docket No. 46). The Declaration included a Stipulation between the Receiver and IDB that includes admissions by IDB that are contrary to the positions taken in the Objection with respect to the Receiver's claim (and, consequently, other claims described in the Objection).[10] The Stipulation was signed on September 16, 2015 by IDB's representative.

---

[10]By referring to the statements and admissions by IDB in the New Jersey litigation, neither the Committee nor any of its members waive any rights or remedies they may have with respect to that litigation and the relief requested therein and each reserve all rights with respect thereto.

37. Paragraph 9 of the Stipulation states as follows (despite that IDB filed the Objection two weeks earlier on September 4, 2015 and serving the same via ECF and electronic mail), "The Receiver represents and warrants that as of the date of this Assignment, the Proof of Claim has not been disputed or challenged by any third party."

38. Paragraph 3 of the Stipulation recognizes the Receiver's recourse claim against Oak Rock when IDB stipulates,

> 3. Nothing herein is in any way meant to limit the scope of this Assignment which specifically includes not only the Proof of Claim itself and the claims which are asserted, described and defined in the Proof of Claim, but also (i) all rights and claims of whatever nature or description which the Receiver may now or in the future own, hold or control against Oak Rock or any successor in interest or any third party, arising out of or in connection with the purchase by Redstone Business Lenders, LLC ("Redstone") of certain participating interests and/or any and all contracts providing or purporting to provide for such purchases in certain loans and advances made by Oak Rock to certain of its borrowers whether or not described, defined or asserted in the Proof of Claim, ***including, but not limited to, any and all claims against Oak Rock arising out of its fraudulent conduct or for breach of any contract or loan agreement,*** and (ii) any and all of the Receiver's rights against Oak Rock's borrowers arising out of or relating to the participated loans or any and all contracts between Redstone and Oak Rock. (Emphasis supplied).

39. IDB's admissions, made less than two weeks after filing its Objection, expressly recognize the provision in paragraph 5 of the common participation agreement noted above providing recourse "**for breach of this agreement, breach of trust or malfeasance**" as noted above.[11]

---

[11] Page 1 of the Stipulation includes the following statement before the 23 numbered paragraphs: "THE UNDERSIGNED HEREBY STIPULATE AND AGREE AS FOLLOWS".

40. Paragraph 16 of the Stipulation is wholly inconsistent with the statements and positions in IDB's Objection when the Stipulation states:

> 16. The Agent, as the assignee of the Proof of Claim and any and all claims described, asserted or defined in the Proof of Claim, shall for all purposes have the same rights as previously held by the Receiver in and to the Proof of Claim or any and all of the claims described in or defined in the Proof of Claim including but not limited to the right to vote or otherwise exercise the rights of the holder of the Proof of Claim.

41. Finally, IDB's agreement to pay over $1.3 million to purchase a claim that less than two weeks before was supposedly worthless speaks volumes about both its Objection and its opposition to the Committee's adversary proceeding. IDB's actions and admissions provide additional bases for this Court to reject and deny its Objection.

## CONCLUSION

42. IDB, with selective allegations and documentation, tries to paint a picture that ignores its inconsistent actions. IDB also ignores or obfuscates what Claimants have already done, and what they may do in the future, to assert recourse liability against the Debtor. IDB's Objection must be denied because it ignores the impact of final judgments as well as a series of actions taken by the Debtor and the Claimants after the execution of the participation agreements on the nature and extent of certain claims asserted by Claimants.

WHEREFORE, the Committee prays that upon hearing the Objection that the Court will reject the same, and grant the Committee such other and further relief to which it may show itself justly entitled.

Dated: New York, New York
September 28, 2015

**PERKINS COIE LLP**

By: */s/ John D. Penn*
    Schuyler G. Carroll
    John D. Penn
    David F. Olsky
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0085
Tel: 212.262.6900
Fax: 212.977.1649
SCarroll@perkinscoie.com
JPenn@perkinscoie.com
DOlsky@perkinscoie.com

Attorneys for the Official Committee of Unsecured Creditors