# *MICHAEL I. BIRNBERG*
### ATTORNEY AT LAW

One Tower Center Boulevard
18th Floor
East Brunswick, New Jersey 08816

(732) 851-1795
*FAX* (973) 939-8532
miblawyer@gmail.com

September 30, 2015

The Honorable Robert E. Grossman
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

|  |  |
|---|---|
| **IN RE** | **OAK ROCK FINANCIAL, LLC** |
| **CASE NO.** | **8-13-72251-REG** |
| **ADV PRO NO** | **8-13-08078-REG** |
| **HEARING DATE** | **OCTOBER 7, 2015 (1:30 PM EST)** |
| **OBJECTION DEADLINE** | **SEPTEMBER 30, 2015 (5:00 PM EST)** |

Dear Judge Grossman:

Please be advised that I represent Finquest, Inc., Birnberg Group Of Florida, Inc., The Birnberg Foundation, Jack Birnberg, As Trustee Of The Michael Birnberg Trust And Of The Jeffrey Birnberg Trust, Louise Birnberg, As Trustee Of The Jack Birnberg Trust, and Saul Birnberg (collectively referred to as the "Birnberg Entities"), regarding the above-captioned matter as it pertains to Israel Discount Bank of New York, as Agent (IDB) and IDB's attempt to bar the proof of claims filed by the Birnberg Entities.

Kindly accept this Letter Brief in lieu of a more formal brief in objection to IDB's contention that the proof of claims that have been filed are unenforceable against the debtor and/or property of the debtor, Oak Rock Financial, LLC (Oak Rock).

## STATEMENT OF FACTS

1.      On or about April 29, 2013 IDB filed an involuntary Chapter 7 Bankruptcy petition against Oak Rock.  By order dated may 6, 2013, these proceedings were converted to a Chapter 11.

2.      The Birnberg Entities filed Proof of Claims in this action on or about August 29, 2013.

3.      Oak Rock was in the business of originating and servicing "revolving" credit lines/loans to various entities.  Such entities, in turn, were able to provide loans to individuals, which acted as collateral.

4.      Oak Rock entered into Participation Agreements with various individuals and entities as a means of generating capital for the aforementioned loans.

5.      The Birnberg Entitles in investing in the Participation Agreements, provided funds directly to Oak Rock.  Oak Rock was to allocate the money directly to the specific participation agreements.  However, neither proofs nor accounting has been provided to demonstrate whether the money that was provided by the Birnberg Entities actually went to the actual participation agreements.

6.      IDB provided funds to Oak Rock and their money allegedly went to fund specific loans, but to date there ahs been accounting of where their money went.

7.      To date, the forensic auditors, in this case, have failed to provide an analysis, going back at least one year, of where the money went that was invested by each party in this matter.  It is acknowledged that the funds were commingled, but a thorough audit could easily demonstrate and reallocate the flow of money to and from each borrower.


## LEGAL ARGUMENT

## QUALIFICATION AS A PROOF OF CLAIM AND AS TRUE PARTICIPATION ARE NOT

## MUTUALLY EXCLUSIVE

The Birnberg Entities were defrauded by Oak Rock and are due compensation.  The question before the Court is how or under what standard of damages are monies owed to the Birnberg Entities.  Debts can be either secured or unsecured, or a hybrid of both.  The Birnberg Entitles filed their respective

proof of claims, thus preserving any and all claims they might have against Oak Rock, both secured and unsecured.

## 1.    IDB has already accepted the fact that the Participation Agreement were unsecured loans

IDB originally took the position that the Proof of Claims filed by the Birnberg Entitles was correct and valid. They argued that any claim to a preferential treatment due to the Birnberg Entitles being Participants due to their participation agreements was invalid and unfounded in fact or law. In fact, such argument prevailed initially in the Bankruptcy Court, but was later reversed. As such, IDB now accepts that the Birnberg Entities are true participants and are no longer entitled to have their proof of claims honored and be considered a creditor.

IDB is collaterally attacking a prior final judgment, with same being endorsed and accepted by IDB. IDB obtained judgments against James Agals, David Schellhardt, Robert Baker, Vincent Salvatore, and Christopher Dowd that were neither contested nor appealed. Those judgments conclusively determined that these individuals held unsecured loans, not true participations. Having obtained these judgments, IDB does not provide any basis on which it may collaterally attack them through the claims process. *See Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800-01 (7th Cir. 2000) ("[C]ollateral attack, especially in civil cases, is disfavored because of the social interest in expedition and finality in litigation. A collateral attack on a final judgment is not a permissible substitute for appealing the judgment within the time, standardly 30 days, for appealing the judgment of a federal district court.").

IDB is now looking for a reversal. Courts typically frown on such a tactic, especially when the party requesting the reversal is the one who prevailed originally.

## 2.    IDB is barred by the Doctrine of Judicial Estoppel

IDB's Objection violates the doctrine of "judicial estoppel." IDB took a position (that the Claimants were creditors, not true participants), prevailed on that position after extensive and expensive litigation, won more than one final adjudication based on that position and now improperly collaterally attacks the very determination that it spent months and caused hundreds of thousands of

3

dollars in legal fees to be incurred in the process.

Notably, the Objection includes the Agals, Baker and Schellhardt claims yet never mentions nor provides any basis for any relief with respect to the final judgments involving each of those claims. The Objection also never articulates a basis to support any argument that those judgments are not preclusive with respect to its Objection.

The principle of judicial estoppel has been recognized by both the United States Supreme Court and the Second Circuit Court of Appeals.

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808 (2001).
>
> A different ruling would threaten the integrity of the bankruptcy process by encouraging parties to alter their positions as to ownership of assets as they deem their litigation needs to change, leaving courts to unravel previously closed proceedings. Doing so would allow parties an opportunity to "play [ ] fast and loose" with the requirements of the bankruptcy process and inject an unacceptable level of uncertainty into its results—exactly the result that the doctrine of judicial estoppel is intended to avoid. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000); accord *In re Adelphia Recovery Trust*, 634 F.3d at 696 (integrity of judicial process threatened by *120 parties taking a short term position that risks being inconsistent with its future position, not only by "knowingly [lying]").*Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 119-20 (2d Cir. 2014).

Oddly, IDB cites to purported "admissions" by Claimants and adjudications by this Court and the District Court as being inconsistent with the Claimants' present position. Again, a typical "double standard" argument made by IDB. However, if the standard IDB espouses is applied to IDB, its prior statement would preclude it from asserting the Objection in the first place. The record is replete with IDB's prior statements that Oak Rock's obligations to Claimants are recourse obligations rather than non-recourse obligations (which is the one reason why the District Court determined that many of the common participation agreements were ambiguous). This is consistent with the provision in many of the

common participation agreements that provided that in certain circumstances, the obligations which were non- recourse would become recourse. More specifically, paragraph 5 of the common participation agreements provides, "Both parties hereto expressly understand and agree that no representations or warranties have been made with respect to the validity or adequacy of any collateral and that each party hereto has no recourse whatsoever to the other party *__excepting only for breach of this agreement, breach of trust or malfeasance__*." (Emphasis supplied.)

To date, neither this Court nor the District Court has been called upon to determine the application of this provision.  John Murphy, Oak Rock's former Chief Executive Officer, has been convicted and sentenced for fraud which harmed parties who purchased participations.   Paragraph 5 of the common participation agreements makes it possible, if not quite likely,   that   breaches   and malfeasance   render   the   obligations   under   the   common participation agreements recourse obligations – even if such obligations may have originally been non-recourse.

3.      **IDB is, arguably, complicit in the Malfeasance**

Oak Rock's Trustee has generated a significant amount of money in collection over the past three years of administering this estate.  The question remains as to who is entitle to the money.  Logic dictates that since all of the money generated was from any one of the many loans that were outstanding, then the money should first be allocated to the outstanding loans.  And since all of the outstanding loans were part of a participation agreement, then the money should first go to the participation agreements.  Even IDB's money went to specify loans.  In effect, they had a constructive participation in specific loans.

However, IDB now makes the argument that the participations are secondary in nature, with IDB's positions being primary to any participation.  Although they did not pick and choose what participation loan to be in, they were aware that their money would be allocated to many of the loans.  In fact, they had access to the books and records of oak Rock, at all times, and were able to monitor where and how their specific dollars were allocated.  Further more, they were able to monitor not only to the outflow of the money, but also were able to monitor the inflow of the money.  Unfortunately, they failed to monitor the flow of money and now look to everyone else to bail them out due to their own

malfeasance. In effect, they breached their fiduciary duty, and their standing in this matter is questionable.

**4.    The Birnberg Entities have Recourse.**

IDB also makes the unintelligible argument that the Participants have no recourse to Oak Rock. Same would be true if the agreements did not provide verbiage that specifically states there is recourse in the event of breach of the agreement, breach of trust or malfeasance. Again, the participation agreements all have this language. Although IDB has not made the argument, yet, that there was no agreement or trust breach or malfeasance, I am sure that they will. This case typifies Oak Rock's malfeasance and breach.

Neither this Court nor the District Court held that a "true participant" could never have an allowed claim against the Debtor. That issue was never presented and doing so flies in the face of paragraph 5 of the common participation agreements which specifically provides participants with a potential for full recourse against the Debtor (just as a "bad boy guarantee" imposes recourse liability based on subsequent actions).

**5.    The Birnberg Entities Can be Both Creditors and True Participants.**

A Claimants' positions are not binary – being either solely participations (with no claim against the Debtor's estate) or completely creditors (asserting no rights with respect to underlying loans to dealers). As noted above, the vast majority of the common participation agreements specifically provide for recourse in at least three situations, "breach of this agreement, breach of trust or malfeasance." The Debtor's former CEO, John Murphy, pled guilty and was sentenced to over 8 years. His punishment (both the length of imprisonment and the amount set for restitution) was based on, in part, the losses likely to be suffered by IDB and the Birnberg Entities.

The case is replete with evidence of suggesting "breach of trust or malfeasance." In addition to his criminal conviction, Murphy has admitted under oath, for example, that he sold participations in certain overadvanced loans and made regular payments on those loans, without telling

the participant about the overadvances.  The Court may conclude that this conduct is a "breach of trust or malfeasance," and if so, the  participant  may  have  recourse  against  Oak  Rock.  Further,  the undisputable cessation of payments under the common participation agreements easily fits within the parameters of a breach of the agreements.  That appears to satisfy another of the conditions for treating the common participation agreements as recourse.

**6.**          **Oak Rock Commingled Funds, as so has the Bankruptcy Estate**

While  some  of  the  Debtor's  underlying  loans  were  sold,  many  of  the  loans  to  dealers continued to be serviced and collected by the bankruptcy estate with the proceeds being deposited into a "Cash Sweep" account.  Over $15 million dollars is currently on deposit in this commingled account that IDB and the Claimants each assert rights upon.  In its Objection, IDB does not propose to segregate the commingled fund or otherwise allocate any specific dollars to specific underlying Oak Rock loans.  IDB also fails to identify dollars that might not be subject to an assertion that the funds are owned by the counterparty on any participation agreement.

This  Court  previously  decided that U.C.C.  § 9-309(3) provides  for  automatic perfection of participation  interests  without  the  need  to  file  financing  statements.  As  a  result,  some  Claimants assert that they have perfected interests in property that is claimed by the Debtor to be property of the estate.  As such, they have rights under § 1111(b)(1)(A).

The recourse nature bestowed by § 1111(b)(1)(A) is not controversial:

> The plain meaning of § 1111(b)(1)(A) is clear and unambiguous. Section1111(b)(1)(A) requires that claims secured by liens on property of the bankrupt estate be treated as recourse claims 'whether or not such holder has such recourse.' In other words, regardless of whether the holder of a claim has recourse under that claim, the § 502(b)(1) determination of allowance or disallowance should be made as if the claim is a recourse claim, so long as that claim is secured by a lien on estate property. The Court  sees  no room  for  interpretation  in  that  text.  There  is  one prerequisite: the claim is secured by a lien on property of the estate. If that prerequisite is satisfied, then the claim is treated as a recourse claim for making the  § 502(b)(1) allowance or disallowance determination, regardless of whether the claimant actually has recourse on that claim."
> *B.R. Brookfield Commons No. 1, LLC v Valstone Asset Mgmt.* LLC, 2013 U.S. Dist. LEXIS 73855 (E.D. Wis. May 24, 2013).

The Birnberg Entities' ultimate rights in and to the commingled funds have yet to be determined

and the Birnberg Entities reserve all rights and remedies with respect thereto.  It should be noted that bankruptcy courts are uniquely qualified and have a host of options for the resolution of multiple conflicting claims regarding commingled funds.

7.    **Proofs of Claims**

The Birnberg Entities either attached a copy of one or more participation agreements to their respective proofs of claim or referred to such documents in their proofs of claim and other pleadings.  By attaching or referencing the participation agreements, the Birnberg Entities provided evidence from ¶ 5 of the common participation agreements to support an assertion that they could simultaneously have claims against the Debtor's estate while also asserting to be a true participant.  The Objection should be denied because it fails to address (or even acknowledge the existence of) that the counterclaims and cross-actions may be recognized as informal amendments or supplements to the existing proofs of claim.

Furthermore, even if the counterclaims and cross-actions are not deemed informal amendments or supplements to the existing proofs of claim, the Objection ignores a substantial body of case law that supports a claimant's ability to amend its proof of claim either as an amended proof of claim or through an informal proof of claim.  The right to amend a proof of claim is normally freely given "where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim".  *Biscayne 21 Condominiums Association, Inc. v South Atlantic Financial Corp. (In re South Atlantic Financial Corp.)*, 767 F. 2d 814, 819 (11th Cir. 1985).

Courts have allowed amendments to proofs of claim in a variety of situations. *See, e.g., In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999) (permitting amendment which added claim for conversion, increased monetary damages, and added punitive damages where additional claims and new theory were based on "exactly the same transactions alleged in the original complaint" which had been attached to the original proof of claim); *In re Black*, 460 B.R. 407 (Bankr. M.D. Pa. 2011) (creditor allowed to amend proof of claim to include negligence theories of recover even though original proof of claim only alleged intentional breach of contract because the subject state-court

8

complaint had put debtor on fair notice about both theories); *In re Hemingway Transport, Inc*., 954 F.2d

1, 10 (1st Cir. 1992) (permitting amendment to proof of claim to include contingent indemnification claim

where original proof of claim was based on, and included a copy of, a mortgage which explicitly

provided it was subject to a specific lease which contained the indemnification clause); *Agassi v. Planet*

*Hollywood Intern., Inc*., 269 B.R. 543, 549-50 (D. Del. 2001) (court found that because the plaintiffs

had attached copies of their contracts to their proofs of claim, the failure of the plaintiffs to specifically

assert their claims for indemnity against the debtor did not bar them from subsequently asserting

claims under the indemnification provisions in their contracts); *In re SemCrude, L.P.*, 443 B.R. 472

(Bankr. D. Del. 2011) (amendments to proof of claim for indemnity and breach of warranty permitted

because those claims were explicit under agreements referenced in proof of claim).

Since each of the original proofs of claim attached (or referenced) the respective Birnberg

Entities' participation agreements, those claims should be afforded the opportunity to amend their proofs

of claim (whether formally or informally) to plead additional theories of recovery based on the

information and documents already included or referenced in their original proofs of claim.

### 8.    Subsequent Admissions by IDB

On September 22, 2015, in Case No. 13-03939 pending in the U.S. District Court for the

District of New Jersey in a case styled *U.S.A. v. Redstone Business Lenders, LLC*, the U.S. Small

Business Administration, as Receiver for Redstone Business Lenders, LLC filed a motion seeking the

approval of the sale to IDB of the Receiver's claim against Oak Rock (Docket No. 46) and the

Declaration of Brian Stern (Docket No. 46). The Declaration included a Stipulation between the Receiver

and IDB that includes admissions by IDB that are contrary to the positions taken in the Objection with

respect to the Receiver's claim (and, consequently, other claims described in the Objection).

(Although some may be controverted by the Birnberg entities). The Stipulation was signed on September

16, 2015 by IDB's representative, and is attached hereto as exhibit A).

Paragraph 9 of the Stipulation states as follows (despite that IDB filed the Objection two

weeks earlier on September 4, 2015 and serving the same via ECF and electronic mail), "The Receiver

represents and warrants that as of the date of this Assignment, the Proof of Claim has not been disputed or challenged by any third party."  Paragraph 3 of the Stipulation recognizes the Receiver's recourse claim against Oak Rock when IDB stipulates,

> 3.    Nothing herein is in any way meant to limit the scope of this Assignment which specifically includes not only the Proof of Claim itself and the claims which are asserted, described and defined in the Proof of Claim, but also (i) all rights and claims of whatever nature or description which the Receiver may now or in the future own, hold or control against Oak Rock or any successor in interest or any third party, arising out of or in connection with the purchase by Redstone Business Lenders, LLC ("Redstone") of certain participating interests and/or any and all contracts providing or purporting to provide for such purchases in certain loans and advances made by Oak Rock to certain of its borrowers whether or not described, defined or asserted in the Proof of Claim, *including, but not **limited to, any and all claims against Oak Rock arising out of its fraudulent conduct or for breach of any contract or loan agreement,*** and (ii) any and all of the Receiver's rights against Oak Rock's borrowers arising out of or relating to the participated loans or any and all contracts between Redstone and Oak Rock. (Emphasis supplied).

IDB's admissions, made less than two weeks after filing its Objection, expressly recognize the provision in paragraph 5 of the common participation agreement noted above providing recourse "**for breach of this agreement, breach of trust or malfeasance**" as noted above.  Paragraph 16 of the Stipulation is wholly inconsistent with the statements and positions in IDB's Objection when the Stipulation states:

> 16.    The Agent, as the assignee of the Proof of Claim and any and all claims described, asserted or defined in the Proof of Claim, shall for all purposes have the same rights as previously held by the Receiver in and to the Proof of Claim or any and all of the claims described in or defined in the Proof of Claim including but not limited to the right to vote or otherwise exercise the rights of the holder of the Proof of Claim.

Furthermore, IDB's agreement to pay over $1.3 million, with a favored nations clause, to purchase a claim that they continually argue is worthless, demonstrates something to the contrary.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court deny IDB's contention that the Birnberg Entities Proof of Claims be deemed null and void.  A ruling that the Birnberg Entities can be both a True Participant and a class member pursuant to its Proof of Claim, which can be amended, is neither binary nor mutually exclusive. IDB's actions and admissions provide additional basis

for this Court to reject and deny its Objection.  Thus, the Birnberg Entities have recourse against Oak Rock and their clams can also be construed as either secured or unsecured and are validly listed as a proof of claim.  Thus, the claims can be listed on the proof of claim and the Birnberg Entitles has the right to amend their proof of claim based upon the progress of the case.


September 30, 2015                                    _____
                                                     Michael Birnberg, Esq.

-A -

## **STIPULATION**

WHEREAS: The United States Small Business Administration ("SBA") is the Receiver (the "Receiver") for Redstone Business Lenders, LLC ("Redstone") pursuant to an Order of the United States District Court for the District of New Jersey ("N.J. District Court") in Case Number 2:13-cv-03939 (DMC), dated June 28, 2013 (the "Receivership Order").

WHEREAS: Oak Rock Financial, LLC ("Oak Rock") is a chapter 11 debtor and debtor-in-possession before the United States Bankruptcy Court for the Eastern District of New York, Case Number 13-72251 (REG).

WHEREAS: the SBA was appointed as Receiver of Redstone, and pursuant to the terms of the Receivership Order is vested with ". . . all powers, authorities, rights and privileges heretofore possessed by the officers, directors, members, managers, investment advisors and other agents of Redstone under applicable state and federal law, by the agreement of the limited liability company, and by-laws of said company, in addition to all powers and authority of a receiver at equity, and all powers and authority conferred upon the Receiver by the provisions of 15 U.S.C. Section 687(c) and 28 U.S.C. Section 754" (Receivership Order, Paragraph 2.)

WHEREAS: on October 22, 2013, the Receiver timely filed a Proof of Claim (inclusive of a Rider and Exhibits 1 and 2 to the Proof of Claim) against the Oak Rock estate (the "Proof of Claim"). On May 12, 2014, the Receiver amended the Proof of Claim (inclusive of a Rider to the Proof of Claim) against the Oak Rock estate (the "Amendment", together with the Proof of Claim, the "Proof of Claim"). A copy of the Proof of Claim is annexed hereto (Exhibit "A"). All capitalized terms used in this Stipulation shall have the meanings set forth and defined in the Proof of Claim.

WHEREAS: Israel Discount Bank of New York ("Agent") is the Agent for a syndicate of lenders composed of itself, Capital One, National Association, Bank Leumi USA, and Bank Hapoalim B. M., who are the holders, among other rights, of secured and unsecured claims against the Oak Rock estate.

WHEREAS: In consideration of the Payment (defined and described below), the Receiver hereby desires to assign and convey to the Agent without restrictions of any kind except for those noted in this Stipulation, all of its rights against Oak Rock and other third parties arising out of and in connection with certain loans made by Oak Rock to certain third party borrowers of Oak Rock, all as more fully defined and described in the Proof of Claim, including but not limited to the Obligations (inclusive of certain proceeds), the Unsecured Deficiency Claim (as defined in the Proof of Claim) and any and all other rights and claims described in or arising out of the Proof of Claim.

THE UNDERSIGNED HEREBY STIPULATE AND AGREE AS FOLLOWS:

1. The above Whereas is integral to this Stipulation and is made a part hereof.

2. The Receiver, for good and valuable consideration which includes the Payment (defined below), hereby irrevocably sells, conveys, transfers, and assigns (as set forth herein, the "Assignment") to Agent all of the Receiver's rights, title and interest in, to and under any and all of its rights and claims against Oak Rock or any successor in interest, in and to certain loans and advances made by Oak Rock to certain of its borrowers, including but

not limited to: (a) all Obligations (inclusive of all funds being held by Oak Rock received by Oak Rock on account of the Obligations); (b) any and all Unsecured Deficiency Claims; (c) all of the Receiver's rights and interests in the Participation Agreements; and (d) any and all alternative or contingent rights and interests as each of the foregoing is asserted, described and defined in the Proof of Claim.

3.  Nothing herein is in any way meant to limit the scope of this Assignment which specifically includes not only the Proof of Claim itself and the claims which are asserted, described and defined in the Proof of Claim, but also (i) all rights and claims of whatever nature or description which the Receiver may now or in the future own, hold or control against Oak Rock or any successor in interest or any third party, arising out of or in connection with the purchase by Redstone Business Lenders, LLC ("Redstone") of certain participating interests and/or any and all contracts providing or purporting to provide for such purchases in certain loans and advances made by Oak Rock to certain of its borrowers whether or not described, defined or asserted in the Proof of Claim, including, but not limited to, any and all claims against Oak Rock arising out of its fraudulent conduct or for breach of any contract or loan agreement, and (ii) any and all of the Receiver's rights against Oak Rock's borrowers arising out of or relating to the participated loans or any and all contracts between Redstone and Oak Rock.

4.  The Receiver represents and warrants that it has the sole right and power to convey and assign the claims described and defined in the Proof of Claim, as well as all other claims arising out of or in connection with Redstone's participating interests in certain loans and advances made by Oak Rock to certain of its borrowers, whether or not described, defined or asserted in the Proof of Claim or otherwise, including claims against third parties, and does hereby convey and assign to Agent all of Redstone's rights and interests as defined in the Proof of Claim and any other rights and claims not referenced by the Proof of Claim, including any claims against third parties, and further represents that it has made no prior assignment of any portion of these claims.  The Receiver further agrees that it will defend at its sole cost and expense any and all claims against the Receiver alleging that the Receiver did not have the right or power to convey the Proof of Claim and shall remit to Agent any and all sums previously paid by Agent to the Receiver if it is determined by suit or settlement that the Receiver did not have the right or power to convey the Proof of Claim.

5.  Notwithstanding any assertions contained in this Stipulation to the contrary, the Receiver specifically excepts from this Assignment any and all actions it may have against any and all of the partners, principals, former officers, or former managers of Redstone Business Lenders, LLC for common law tort, breaches of contract, breaches of fiduciary duties, and  violations of the SBA Regulations (13 CFR Sections 107 et seq.) and/or of the Small Business Investment Act of 1958, as amended (15 U.S.C. Sections 661 et seq.).

6.  The Receiver represents and warrants that the amount of the Obligations as provided for in the Proof of Claim is not less than $20,799,122.00.

7.  If one or more of the Participation Agreements is successfully challenged in whole or in part due to an error in the calculation of the amount due to the Receiver, then the amount paid to the Receiver by the Agent attributable solely to the successfully challenged Participation Agreement as calculated by the formulas set forth in Paragraph 12 of this Stipulation, below, observing the differences in values between Tier I and Tier

III claims, and excluding therefrom the stated amount in connection with potential litigation fees and costs associated with the Proof of Claim shall be refunded by the Receiver in an amount which is the same percentage of the Payment due the Receiver as the Payment to the Receiver excluding the amount in connection for potential litigation costs ($1,325,000 - $16,622 = $1,308,378) is to the Receiver's Proof of Claim ($1,308,378/$20,799,122 = 6.2905%). In any event the Payment attributable solely to the successfully challenged Participation Agreement shall not exceed the amount paid to the Receiver attributable solely to that Participation Agreement. Except as otherwise set forth herein, Agent shall have no recourse against the Receiver with respect to this Stipulation, the Assignment, or the Proof of Claim. Upon receipt of the Payment, the Receiver releases and forever discharges the Agent, its assignees and successors-in-interest from any and all claims, claims for relief, demands, costs, expenses, damages, liabilities, and obligations of any nature arising out of or relating to the Assignment and the Proof of Claim. Upon entry of a final non appealable order by the N.J. District Court approving this Stipulation, Agent releases and forever discharges the Receiver, its assignees and successors-in-interest from any and all claims, claims for relief, demands, costs, expenses, damages, liabilities, and obligations of any nature arising out of or relating to the Assignment and the Proof of Claim.

8. For the duration of Oak Rock's chapter 11 bankruptcy case or, if the chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, for the duration of Oak Rock's chapter 7 case, if the Agent purchases or acquires by assignment or otherwise the claim of any other creditor of the Oak Rock estate or participant in Oak Rock's loans to its borrowers (such creditor or participant, a "Third Party Claimant"), other than ZFI Endowment Partners L.P., North Mill Capital LLC, or Medallion Financial Corp., Medallion Business Credit, LLC and/or Medallion Bank, for an amount in excess of ten (10%) percent of the outstanding balance of the Third Party Claimant's interest in a Tier I loan or five (5%) percent of the outstanding balance of the Third Party Claimant's interest in a Tier III loan, then (a) within three (3) business days of making such payment to the Third Party Claimant, the Agent shall notify the Receiver of such payment, and (b) within seven (7) business days of making such payment to the Third Party Claimant, the Agent shall pay the Receiver (i) in the case of an acquisition by the Agent of an interest in a Tier I loan, an amount equal to the product of $5,368,237.10 multiplied by the difference between the percentage of the outstanding balance paid to the Third party Claimant and the ten (10%) percent previously paid to the Receiver for its interests in Tier I loans pursuant to this Agreement, and (ii) in the case of an acquisition by the Agent of an interest in a Tier III loan, an amount equal to the product of $15,431,084.20 multiplied by the difference between the percentage of the outstanding balance paid to the Third party Claimant and the five (5%) percent previously paid to the Receiver for its interests in Tier III loans pursuant to this Agreement.[1]

9. The Receiver represents and warrants that as of the date of this Assignment, the Proof of Claim has not been disputed or challenged by any third party.

10. The Receiver represents and warrants that all of the documents referenced in the Proof of Claim and attached thereto are complete, true and correct, to the best of the Receiver's knowledge and belief.

---

[1]. References herein to "Tier I" or "Tier III" shall have the meanings given to them by Oak Rock in its Schedules of Assets and Liabilities (ECF Doc. No. 209) (the "Schedules") and adopted by Agent in Oak Rock's chapter 11 bankruptcy case

SPG/1798463.2/063464

11. If any of the representations set forth in the Proof of Claim are discovered to be materially inaccurate, Agent, at its sole option, shall be entitled to the rescission of this Stipulation and the return of the Payment.

12. Payment shall mean the receipt by the Receiver of the sum of $1,325,000.00 calculated by: (a) attributing ten (10%) percent of the face amount of all Tier 1 claims held by Redstone (as defined in the Schedules, or $536,823.71); plus (b) five (5%) percent of the face amount of all Tier III claims held by Redstone (as defined in the Schedules or $771,554.21); plus (c) $16,622.08 in connection with potential litigation fees and costs associated with the Proof of Claim (the "Calculation"); and payable to the Receiver immediately following the entry by the N.J. District Court in Case Number 12:13-cv-03939 (DMC), of a final non appealable order approving this Stipulation.

13. The Receiver shall within ten (10) days of the execution of this Stipulation file an application with the N.J. District Court to approve this Stipulation and use its best efforts to obtain such approval from such Court as soon as possible. Failure of the Receiver, despite its best efforts, to obtain an order of the N.J. District Court approving the terms of this Stipulation shall render the terms of this Stipulation null and void and unenforceable with each party being responsible for their respective costs and expenses.

14. The Receiver shall indemnify the Agent (on a dollar for dollar basis) for any setoff or reserve deducted from any distribution made by the Oak Rock estate on account of the Proof of Claim arising out of or in connection with any judgment or settlement of any cause of action brought by the Oak Rock estate against the Receiver under sections 547 and 548 of the Bankruptcy Code; provided, however, that any such indemnification shall not in any event in the aggregate exceed Agent's Payment to the Receiver.

15. The Assignment is without restriction of any kind, nature or description, except as noted in Paragraph 5 of this Stipulation, and Agent is entitled to all of the same rights and remedies that were available to the Receiver to pursue any and all parties to collect upon the claims as described in the Proof of Claim or any other claims arising out of or in connection with the purchase by Redstone of certain participating interests in certain loans and advances made by Oak Rock to certain of its borrowers, whether or not described, asserted or defined in the Proof of Claim or otherwise.

16. The Agent, as the assignee of the Proof of Claim and any and all claims described, asserted or defined in the Proof of Claim, shall for all purposes have the same rights as previously held by the Receiver in and to the Proof of Claim or any and all of the claims described in or defined in the Proof of Claim including but not limited to the right to vote or otherwise exercise the rights of the holder of the Proof of Claim.

17. The representations and warranties made in this Stipulation shall survive the execution and consummation of this Stipulation but, in any event, shall terminate upon entry of a Final Order of the N.J. District Court ordering the termination of the Redstone Receivership and the discharge of the Receiver, its attorneys and agents.

18. This Stipulation and any other documents executed in order to implement the provisions of this Stipulation shall be governed by and construed in accordance with the laws of the State of New York, irrespective of choice of laws principles.

SPG/1798463.2/063464

19. This Stipulation and any documents to be delivered pursuant hereto, constitute the entire agreement of the parties, supersede all prior agreements and understandings, written or oral, with respect thereto and are made without reliance on any statement or representation not contained herein, the making of any such statements or representations being specifically denied. No amendment to or waiver of, any provision to this Stipulation shall be enforceable except as set forth in writing signed by the party to be charged.

20. This Stipulation may be executed in multiple counterparts and shall become effective when it has been signed by duly authorized representatives of each of the parties and a fax or electronic signature shall be deemed an original for all purposes.

21. Each party to this Stipulation represents and warrants that it has full authority to execute the Stipulation and to bind itself to the Stipulation by execution hereof, that except with respect to the final non appealable order of the N.J. District Court approving this Stipulation, each party has obtained all necessary legal approvals to enter into this Stipulation, and that the execution and delivery of this Stipulation will not violate any agreement, court order, administrative order of any governmental entity, or any law or governmental regulation.

22. This Stipulation shall be binding upon and inure to the benefit of, and be enforceable by, the parties hereto and all of their respective successors and assigns.

SPG/1798463.2/063464

23. The parties to this Stipulation agree to execute any and all documentation required by either party to this Stipulation which is deemed necessary by either party to implement the terms of this Stipulation.

Dated:  September __, 2015

United States Small Business Administration
as Receiver for Redstone Business Lenders, LLC

By:_____
Name: Thomas G. Morris
Title:    Director, Office of Liquidation
          U.S. Small Business Administration as
          Receiver for Redstone Business Lenders, LLC

Dated:  September _16_ 2015
          New York, New York

Israel Discount Bank of New York, As Agent for itself and various lenders including those identified in the fifth Whereas paragraph

By_____
Name:
Title:          Jerry Hertzman
                Senior Vice President 1

- 6 -

23. The parties to this Stipulation agree to execute any and all documentation required by either party to this Stipulation which is deemed necessary by either party to implement the terms of this Stipulation.

Dated: September 17, 2015

United States Small Business Administration
as Receiver for Redstone Business Lenders, LLC

By: _____
Name: Thomas G. Morris
Title:    Director, Office of Liquidation
          U.S. Small Business Administration as
          Receiver for Redstone Business Lenders, LLC

Dated: September ___, 2015
          New York, New York

Israel Discount Bank of New York, As Agent for itself and
various lenders including those identified in the fifth Whereas
paragraph

By_____
Name:
Title:

- 6 -