**SAM P. ISRAEL, P.C.**
Sam P. Israel, Esq. (SPI-0270)
Timothy L. Foster, Esq. (TF-0017)
1 Liberty Plaza, 35th Floor
New York, New York 10006
T: (646) 787-9880; F: (646) 787-9886
samisrael@spi-pc.com
timfoster@spi-pc.com

**Hearing**: October 7, 2015
1:30 p.m.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re:

**OAK ROCK FINANCIAL, LLC,**

        **Debtor.**
-------------------------------------------------------------x

**Chapter 11**

**Case No. 8-13-72251-REG**

# JOINT MEMORANDUM OF LAW IN OPPOSITION TO THE OMNIBUS OBJECTION OF ISRAEL DISCOUNT BANK OF NEW YORK, AS AGENT, TO PROOFS OF CLAIM OF NORTH MILL CAPITAL, LLC AND ZFI ENDOWMENT PARTNERS, L.P.

North Mill Capital, LLC ("**North Mill**") and ZFI Endowment Partners, L.P. ("**ZFI**"; together with North Mill for purposes of this memorandum, the "**Claimants**"), respectfully jointly submit this memorandum of law in opposition to the Omnibus Objection of Israel Discount Bank of New York, as Agent, to Proofs of Claim Nos. 7-10, 12-15, 19, 22-23, 25-62, 64-68, and 70-72 Because the Claims are Unenforceable Against the Debtor and/or Property of the Debtor (the "**Objection**"), filed by Israel Discount Bank of New York ("**IDB**"), as agent for itself and a group of lenders (the "**Lenders**") on September 4, 2015, seeking dismissal of numerous proofs of claim (including those by North Mill and ZFI)) submitted in connection with the bankruptcy of Oak Rock Financial, LLC ("**Oak Rock**" or the "**Debtor**"), and state as follows:

## I. RELEVANT FACTS

In October 2010, North Mill acquired a portfolio from Summa Capital Corp. ("**Summa**") which included a participation interest (the "**North Mill Participation**") in a loan made by Oak Rock to one of its dealers (the "**Merchants Advance Loan**") pursuant to an agreement dated November 25, 2008 between Summa and Oak Rock (the "**North Mill Participation Agreement**"; *see* Objection Ex. 49 (the "**North Mill Proof of Claim**"), Ex. A (at PDF pp. 15-22)). Through subsequent documents, North Mill increased the amount of the North Mill Participation from $1,500,000.00 to $4,000,000.00 on or about September 21, 2012. *See* Objection Ex. 49 Ex. D (at PDF pp. 32-33).

Under the Participation Agreement, North Mill is entitled to a percentage of any payment of either principal or interest received by Oak Rock (proportional to the amount of its participation) in connection with the Merchants Advance Loan. *See* North Mill Participation Agreement ¶¶ 2.2, 2.5. In fact, upon receiving payment of charges or interest on the Merchants Advance Loan, Oak Rock was at all times obligated to transmit a proportional interest payment to the Participant, "as and when collected." North Mill Participation Agreement ¶ 3.4. Prior to transmittal, any monies received in connection with the Merchants Advance Loan and owed proportionally to the Participant are to be held by Oak Rock "as custodian for the benefit of the Participant," to the extent of the participation interest. North Mill Participation Agreement ¶ 3.6.

ZFI purchased from Oak Rock a similar participation (the "**ZFI Participation**") in the Merchants Advance Loan, which transaction was governed by an agreement dated March 30, 2013 (the "**ZFI Participation Agreement**"; *see* Objection Ex. 50 (the "**ZFI Proof of Claim**"), Ex. A (at PDF pp. 13-18)). The ZFI Participation had a maximum amount of $1,000,000.00, and, as with the North Mill Participation Agreement, it obligated Oak Rock to hold "as custodian for the benefit of the Participant" the participant's portion of any monies received from Merchants Advance in repayment of either the principal or interest on the Merchants Advance Loan. *See* Objection Ex. 50, Ex. A ¶¶ 2.1, 3.6.

On April 29, 2013 (the "**Petition Date**"), IDB, along with other Lenders, filed an involuntary petition against Oak Rock under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of New York (the "**Court**").  On the Debtor's motion, the Court converted the case to one under Chapter 11 (the **"Ch. 11 Proceeding"**) on May 6, 2013.  Along with others, North Mill and ZFI each filed proofs of claim against the Debtor in connection with their respective participation interests.  *See* Objection Exs. 49, 50.  The Debtor continued to collect revenue on the Merchants Advance Loan post-petition, whether through usual monthly payments from Merchants Advance or in a lump sum from the outright sale of the Merchants Advance Loan; yet, aside from one payment made to North Mill in 2015 (*see* n.2 *infra*), North Mill has not received any payments of interest or principal on the Merchants Advance Loan since April 2013, and ZFI never received any payments at all in connection with its participation.  *See* Objection Ex. 49 at PDF pp. 9-11, ¶¶ 14-20.

On May 30, 2013, the Debtor commenced Adversary Proceeding Number 13-8077-REG (the "**8077 Adversary Proceeding**"), naming ZFI, North Mill, and IDB as defendants.  *See* 8077 Adv. Proc. Dkt. No. 1.  Also on May 30, 2013, numerous other adversary proceedings were commenced, including those involving Medallion Bank and Medallion Business Credit, LLC, a division of Medallion Financial Corp. (collectively, "**Medallion**"), also participant claimants in the Chapter 11 Proceeding, on one side, and the Debtor, IDB, and other Lenders on the other (*see* Adversary Proceeding Number 13-08075-REG and Adversary Proceeding Number 13-08080-REG (collectively, the "**Medallion Adversary Proceeding**")).  The central issues in both the 8077 Adversary Proceeding and the Medallion Adversary Proceeding focused on whether the claimants (*i.e.*, North Mill, ZFI, and Medallion) held "true" participation interests in the Merchants Advance Loan, or held instead "disguised loans" to Oak Rock.  In resolving competing summary judgment motions to determine the status of the Claimants' interests, the Court found that North Mill and Medallion own "true" participations in the Merchants Advance Loan, but that ZFI, and numerous other movants, had issued "disguised loans" to Oak Rock and were thus not "true"

participants in the underlying loans. *See* Supplemental Findings of Fact and Conclusions of Law dated April 10, 2014 (the "**Supp. Findings**"), 8077 Adv. Proc. Dkt. No. 102 at 18-19.

Having determined which claimants were "true participants," the Court also needed to decide whether such interests were excluded from the Debtor's estate pursuant to 11 U.S.C. § 541(d)[1] ("**Section 541(d)**"). The Court held that Section 541(d) can apply to loan participations, but equivocated as to whether Section 541(d) was fully operational here; while, under normal circumstances, "[b]ecause the Debtor would hold [only] bare legal title to the funds, they would be excluded from the Debtor's estate," here, the Court explained, IDB's asserted lien over "all of the Debtor's assets" would somehow also cover "the cash collected and currently held by the Debtor on the underlying loans," thus *preventing* the immediate release of funds to the Claimants[2] generally prescribed by Section 541(d). *See* Supp. Findings at 18-19.

ZFI, along with certain other claimants ruled not to be "true" participants, appealed the Court's decision and, on March 31, 2015, received an Opinion and Order (the "**District Court Decision**") by United States District Judge Sandra J. Feuerstein which reversed the Court's original decision in the Supplemental Findings and found ZFI to be a "true" participant in the Merchants Advance Loan, and, with respect to all of ZFI's co-appellants, remanded the issue back to this Court for further findings of fact in order to be able to determine whether those entities were also true participants. *See* E.D.N.Y. Case No. 14-cv-03874-SJF Dkt. No. 12.

---

[1] 11 U.S.C. § 541(d) reads, in relevant part: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

[2] The Court did order the release of $1,500,000.00 to North Mill, as this portion of the principal of North Mill's participation had been the subject of lien termination documents filed by IDB in 2010. Our understanding is that North Mill received payment of this $1,500,000.00 portion several months ago, leaving North Mill with an outstanding $2,500,000.00 balance in participation principal currently held by Oak Rock.

3

While ZFI's appeal was pending before Judge Feuerstein, Medallion and North Mill, as the sole true participants at that time, were litigating cross-motions for summary judgment against IDB "asking the Court to determine the priority, extent and enforceability of" IDB's asserted lien over the Debtor's assets vis-à-vis the true participations of North Mill and Medallion.  Ch. 11 Proceeding Dkt. No. 840 at 1.  The Court issued its Memorandum Decision (the "**Lien Decision**"; Ch. 11 Proceeding Dkt. No. 840) resolving those motions on March 19, 2015.  The Lien Decision granted judgment in favor of IDB, and against North Mill and Medallion, finding generally that "[a]s between IDB and the True Participants, the priority rules place IDB as Agent in the first position."  Lien Decision at 19.  In reaching this conclusion, the Court characterized true participants as "junior lienholders" who "acquired their liens subject to the prior recorded lien of IDB."  Lien Decision at 20.  Similarly, the Court explained that when a true participant "purchased its participation interest it acquired an automatically perfected security interest in the payment intangibles."  Lien Decision at 32.  North Mill, Medallion, and ZFI (once it was declared a true participant by the District Court Decision) appealed the Lien Decision to the U.S. District Court for the Eastern District of New York, and these consolidated appeals are currently pending before Judge Feuerstein.  *See* E.D.N.Y. Case No. 15-cv-01826 (North Mill Appeal); E.D.N.Y. Case No. 15-cv-02165 (ZFI Appeal); E.D.N.Y. Case No. 15-cv-01757-SJF (Medallion Appeal under which all three appeals are consolidated).

IDB filed the Objection on September 4, 2015, seeking dismissal of the true participants' claims on the purported grounds that their status as true participants prevents the Claimants from having valid claims against the Debtor's property in the Chapter 11 proceeding.

## II. ARGUMENT

### POINT 1. THE ASSERTED CLAIMS BELONG IN BANKRUPTCY COURT BECAUSE THE CLAIMANTS AND IDB SEEK RECOVERY OF THE SAME FUNDS.

A party objecting to a claim in bankruptcy "bears the burden of putting forth sufficient evidence to rebut the *prima facie* validity of the claim." *Campora v. HSBC Bank USA, N.A. (In re Campora)*, 2015 U.S. Dist. LEXIS 117862 at *24 (E.D.N.Y. Sept. 1, 2015) (*quoting In re Taranto*, 2012 Bankr. LEXIS 1320 at *5 (Bankr. E.D.N.Y. March 27, 2012)). IDB wrongly seeks disallowance of the claims at issue because, IDB argues, the true participants' claims are "against property which is not part of the Debtor's estate." Objection at ¶ 49. In truth, the asserted claims belong in Bankruptcy Court because they seek recovery from the same body of funds, currently being held by Oak Rock, to which IDB also lays claim through the assertion of its lien over the Debtor's assets, and because IDB has failed to submit any *evidence* to overcome the assumed validity of the claims, instead offering only baseless and internally inconsistent argument.

The Debtor currently holds funds obtained in connection with the Merchants Advance Loan—funds obtained through either the original purchase price tendered by the Claimants to obtain their participations, through regular monthly payments of principal and interest made by Merchants Advance, or through selling the Merchants Advance Loan (*see* Supp. Findings at 18 (noting that the Merchants Advance Loan "was sold during the bankruptcy and the net sale proceeds of which the Debtor is holding in escrow")). To the extent of their respective participation amounts in the Merchants Advance Loan, North Mill and ZFI have a possessory interest in their contractual proportion of those monies. Because this Court has ruled that Section 541(d) applies to these participations, it follows that Oak Rock possesses bare legal title to those funds, but the equitable interest belongs to the Claimants. *See* Section 541(d) (excluding from the debtor's estate "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest."). And yet, the Claimants are denied their funds as a result of the Court's ruling that it "cannot enter an order

directing turnover of any of the proceeds being held by the Debtor" because "IDB claims to have a perfected lien on all of the Debtor's assets, which would include the cash collected and currently held by the Debtor on the underlying loans." Supp. Findings at 19.

In order for IDB's lien to have any effect whatsoever on the Claimants' interests, the monies sought by the Claimants must necessarily be considered, at this moment, to be part of "the Debtor's assets," since IDB's lien can extend, at most, to all of Oak Rock's assets. If the funds sought by the Claimants are indeed among the current assets of the Debtor, then IDB's argument fails and the claims must be allowed because they seek recovery from the very "property of the estate"—the same property from which IDB also hopes to recover.

On the other hand, if the funds tied to the Claimants' participation interests are *not* among the Debtor's assets, then IDB may be correct that North Mill and ZFI would no longer have valid claims against the Debtor's property. But in doing so, IDB may win a battle but necessarily lose the war, as IDB's lien could (by definition) no longer apply to the Claimant's funds in such a scenario, since IDB's lien applies, at most, to all the "assets of the Debtor."

It is indisputable that, because North Mill and ZFI do not yet have possession of the monies to which they are entitled under their participation agreements with Oak Rock, the Claimants and IDB are, essentially, fighting over the same body of funds currently being held by Oak Rock—and seeking recovery from the same fund being administered by this Court in the Chapter 11 Proceeding. Justice and equity, not to mention basic consistency of logic, compel one of two outcomes to IDB's Objection: either 1) the money tied to the Claimants' participations is currently (if temporarily) the "property of Oak Rock," prevented from release to the Claimants due to the Lien Decision's ruling that IDB's lien has priority over the Claimants' interests, in which case the Claimants' claims seek recovery of the Debtor's assets and no grounds exist for their disallowance; or 2) the money tied to the Claimants' participations is not the "property of Oak Rock," in which case IDB has no claim whatsoever over those funds, and that

6

money must immediately be turned over to its rightful owners (*i.e.*, North Mill and ZFI). IDB cannot "have its cake and eat it, too" by simultaneously arguing for purposes of disallowance that the claims target "non-property of the Debtor" and for purposes of asserting its lien that the claims seek to remove from "the Debtor's assets." To avoid blatant logical inconsistency, the claims must be allowed, or the funds turned over to the Claimants.

### POINT 2. THE CLAIMANTS DO HAVE RECOURSE TO THE DEBTOR.

IDB argues in its Objection that the Claimants, due to their status as true participants, "are not creditors (or equity security holders) of the Debtor and thus their proofs of claim must be disallowed in their entirety." Objection at ¶ 5. However, not only has there never been a ruling that true participants are somehow precluded from also having status as creditors, the law of this case indicates that, indeed, the Claimants are both true participants *and* secured creditors of the Debtor. *See* Lien Decision at 20 (". . . the True Participants acquired their liens subject to the prior recorded lien of IDB… [a]s a matter of law they stand in the position of junior lienholders . . ..");  Lien Decision at 32 ("When Medallion purchased its participation interest it acquired an automatically perfected security interest in the payment intangibles."). IDB has not presented any evidence or case law to the contrary.

Moreover, IDB's disingenuous assertion that the Claimants' previous arguments for the participation agreements being "without recourse to the Debtor" (*see, e.g.*, Objection p. 25 at ¶ 29) now bars the Claimants from asserting claims against the Debtor in the Chapter 11 Proceeding is nothing more than a blatant and transparent attempt to use out-of-context phrasing to manipulate the facts and put words into the Claimants' mouths. As all involved in this case now well know, the "most determinative factor" in determining whether a particular transaction is a "true" participation or a disguised loan "is the risk allocation involved in the transaction . . . in cases considering whether financial transactions are true participations or disguised loans, the most important question is whether the alleged participant is subject to the risk of loss resulting from

7

default by the underlying borrower." District Court Decision at 14-15 (internal quotations omitted). Thus, the Claimants pointed out in arguing for classification as true participants that they bore the same risk as Oak Rock with respect to the performance of the underlying dealer loans—they had *no recourse* against Oak Rock *with respect to a default by the borrower*. If the borrower failed to pay Oak Rock, the participants received no benefit from their participation, and they were not able to look to Oak Rock for recompense for the borrower's non-performance; this is a hallmark of a "true" participation. This does *not* mean, however, nor have the Claimants ever argued, what IDB suggests—that the participation agreements somehow precluded any legal action to be taken against Oak Rock for any reason whatsoever. To the contrary, the participation agreements imposed obligations for payment, communication, and confidentiality on both parties, and expressly contemplated the possibility of legal action between the parties in the event that one of them breached their obligations therein. *See* Objection Ex. 49, Ex. A (North Mill Participation Agreement) at PDF p. 21, ¶ 6.6 ("Each of the parties hereby unconditionally waives its right to a jury trial of any claim or cause of action based upon or arising out of . . . this agreement . . . [i]n the event of litigation, this agreement may be filed as a written consent to trial by the court."); Ex. 50, Ex. A (ZFI Participation Agreement) at PDF p. 17, ¶ 6.6 (same language as previous quote). Plainly, the "recourse to the Debtor" disavowed in the Claimants' previous arguments was in connection with a default by the borrower of Oak Rock's loan; at no point have the Claimants waived or renounced their rights to bring action against Oak Rock for independent wrongs or breaches committed by Oak Rock itself.

Indeed, here Oak Rock is holding monies it gained in connection with the Merchants Advance Loan, a portion of which rightfully belongs to North Mill and ZFI (to the extent of their proportional interests therein). By failing to remit those funds despite the Claimants' requests, Oak Rock is arguably in breach of the participation agreements, and the claims must be maintained in order to preserve the Claimants' rights to recover for such a breach. The Claimants maintain recourse against the Debtor

8

in their claims to recover their participation monies, and IDB has no credible evidence to show otherwise.

### III.     CONCLUSION

For all of the foregoing reasons, the Objection should be denied and dismissed, and/or an order should issue granting North Mill and ZFI immediate recovery of their proportional funds in the monies obtained by the Debtor in connection with the Merchants Advance Loan.

Dated: New York, New York
September 30, 2015

Sam P. Israel, P.C.
By:

_____
Sam P. Israel (SPI-0270)
Timothy L. Foster (TF-0017)
1 Liberty Plaza, 35th Floor
New York, New York 10006
T: (646) 787-9880; F: (646) 787-9886
samisrael@spi-pc.com
timfoster@spi-pc.com
*Attorneys for North Mill Capital, LLC*