## LITIGATION FUNDING AGREEMENT

THIS LITIGATION FUNDING AGREEMENT (this "Agreement"), dated as of July 19, 2016, is made by and among the Official Committee of Unsecured Creditors of Oak Rock Financial LLC (the "Committee"), and Cedar Glade Capital, LLC ("Funder"). The Committee and Funder shall be referred to herein from time to time collectively as the "Parties" and each individually as a "Party." Definitions of capitalized terms not otherwise defined are set forth in Section 7.1.

**WHEREAS:**

A. Oak Rock Financial LLC is a debtor and debtor in possession (the "Debtor") in the bankruptcy case under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), filed on April 29, 2013 in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), Case No. 13-72251 (the "Chapter 11 Case").

B. On May 27, 2014, the United States Trustee for the Eastern District of New York appointed the Committee. [Docket No. 573] On June 19, 2014, the United States Trustee for the Eastern District of New York filed an amended appointment of the Committee. [Docket No. 614]

C. On August 12, 2014, the Bankruptcy Court approved a stipulation between the Committee and the Debtor (the "Stipulation") in which the Debtor "authorize[d] and consent[ed] to the Committee's pursuit, standing, settlement, compromise, and/or abandonment of the Assigned Causes of Action on behalf of the Debtor and its estate", in which such "Assigned Causes of Action" included "all of the claims or causes of action that the Debtor and the Debtor's estate may have against IDB in its capacity as agent under the Amended and Restated Credit Agreement, including those relating to the nature, extent, priority and/or validity of the liens, security interests and claims asserted by IDB in the Chapter 11 Case, and any affirmative claims, causes of action or entitlement to equitable or other relief that arise under the Bankruptcy Code or any other applicable law that the Debtor has or may have the right to assert against IDB in its capacity as agent under the Amended and Restated Credit Agreement under common law, statute, rule or otherwise." [Docket No. 674]

D. The Committee, on behalf of the Debtor's bankruptcy estate arising under section 541 of the Bankruptcy Code (the "Estate") and in accordance with the Stipulation, has commenced the adversary proceeding captioned *Official Committee of Unsecured Creditors ex rel. Bankruptcy Estate of Oak Rock Financial, LLC v. Israel Discount Bank of New York et al.*, Adv. Pro. No. 14-08231, pending in the Bankruptcy Court (together with any refiling, counterclaim, appeal, settlement, enforcement action, arbitration, or other action or process related thereto, whether primary, ancillary, or parallel, the "Claim").

E.  In connection with the Chapter 11 Case and subject to the terms and conditions contained herein, following the entry of the Litigation Funding Order and subject to the terms and conditions thereof, the Committee, on behalf of the Estate, wishes to obtain, and Funder has agreed to provide, the Committed Capital (as defined herein) for the purpose of permitting the Committee to continue the prosecution of the Claim, all as more specifically set forth herein and in the Litigation Funding Order.

F.  The transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court and will be consummated pursuant to the Litigation Funding Order.

NOW, THEREFORE, in consideration of the premises and the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE 1
## LITIGATION FUNDING; SALE OF LITIGATION PROCEEDS RIGHTS

**Section 1.1** **Sale of Litigation Proceeds Rights.**

Subject to the terms and conditions set forth herein and in the Litigation Funding Order, Funder and the Committee each acknowledge and agree that, effective as of the Effective Time, the Committee, on behalf of the Estate, shall convey to Funder, and Funder hereby shall receive, all of the Estate's right, title and interest in and to the Litigation Proceeds Rights (as defined herein). For the avoidance of doubt, the conveyance of the Litigation Proceeds Rights shall not convey the ownership of the underlying causes of action or the right to Proceeds in excess of the applicable amounts set forth in the definition of Litigation Proceeds Rights.

**Section 1.2** **Funding Payment.**

In consideration for the conveyance by the Estate of the Litigation Proceeds Rights, Funder shall on the Closing Date (as defined herein) make a single payment as set forth herein to the Committee, on behalf of the Estate, in the amount of $1,500,000 less the Funder Expense Reimbursement (the "Committed Capital").

**Section 1.3** **Security Interest.**

To secure its obligation to Funder represented by the Litigation Proceeds Rights acquired by Funder pursuant to this Agreement, the Committee on behalf of the Estate hereby grants to Funder senior, first priority security interests in, to and against the Claim, the Proceeds, the Litigation Proceeds Rights, whether such property is in the accounts as of the Effective Time or is after-acquired. Such security interests shall terminate only upon the irrevocable receipt in cash by Funder of the full value of Funder's Litigation Proceeds Rights.

**Section 1.4** **Closing.**

The closing of the transactions contemplated hereby (the "Closing") shall take place as described below at 10:00 a.m. New York, New York time on the second (2nd) Business Day

following the satisfaction or (to the extent permitted) waiver of the conditions set forth in ARTICLE 5 (excluding those conditions that, by their terms, cannot be satisfied until the Closing), or at such other place and time as the Parties shall mutually agree. The Closing shall be effective as of 12:01 a.m. New York, New York time (the "Effective Time") on the day of the Closing (the "Closing Date").

### Section 1.5    Closing Actions and Deliveries.

(a)    On the Closing Date, the Committee shall deliver to Funder such documents, instruments or certificates as shall be reasonably requested by Funder and Funder's Counsel.

(b)    On the Closing Date, Funder shall deliver to the Committee:

(i)    the Committed Capital; and

(ii)    such documents, instruments or certificates as shall be reasonably requested by the Committee and Committee Counsel.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES OF THE COMMITTEE ON BEHALF OF THE ESTATE

The Committee on behalf of the Estate hereby represents and warrants to Funder as follows:

### Section 2.1    Authority and Enforceability.

Subject to the entry of the Litigation Funding Order, the Committee has all requisite power and authority to execute and deliver this Agreement on behalf of the Estate and to consummate the transactions contemplated hereby. Subject to the entry of the Litigation Funding Order, this Agreement has been duly and validly executed and delivered by the Committee and constitutes a valid, legal and binding agreement of the Estate, enforceable against the Committee and the Estate in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar Laws affecting creditors' rights and remedies generally and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding at Law or in equity).

### Section 2.2    Use of Committed Capital.

The Committed Capital shall be used solely for: (a) payment of the expenses incurred by or on behalf of the Committee to prosecute the Claim including, but not limited to, expert witness fees; and (b) payment of outstanding or future fees of Committee Counsel incurred solely in connection with the prosecution of the Claim.

Section 2.3    **Brokers.**

No broker, finder or investment banker is entitled to any broker's, finder's or investment banker's fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by and on behalf of the Committee or the Estate.

Section 2.4    **Common Interest.**

The Committee has received advice from Committee Counsel regarding the common-interest doctrine in the State of New York.

Section 2.5    **Full Disclosure.**

The Committee represents that, as of the date of this Agreement, the Committee has provided Funder all information requested by Funder's counsel relating to the Claim and the Other Assets, excluding information protected by privilege (including but not limited to attorney-client privilege and attorney work product) and information that is subject to the Protective Orders.

Section 2.6    **No Impairment.**

(a)    The Committee has not taken any action (including executing documents) or failed to take any action, which would give any person or entity other than the Estate and Funder an interest in the Litigation Proceeds Rights.

(b)    The Committee agrees and undertakes that it will not, and will use best efforts to ensure that the Estate does not, (i) take any step reasonably likely to have a materially adverse impact on the Claim or the Litigation Proceeds Rights; and (ii) take any step that would give any person or entity other than the Estate and Funder an interest in the Claim, any Award, or the Litigation Proceeds Rights.

Section 2.7    **Completeness and Accuracy.**

The Committee represents that as of the date of this Agreement, (i) all material information it and Committee Counsel have provided to Funder is true and correct, and (ii) all its representations and warranties in this Agreement are true and correct.

Section 2.8    **No Other Representations and Warranties.**

Except for the representations and warranties contained in this ARTICLE 2, neither the Committee nor any other Person has made or makes any other express or implied representation or warranty, either written or oral, on behalf of the Debtor or the Estate, or any representation or warranty arising from statute or otherwise in Law.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES OF FUNDER

Funder hereby represents and warrants to the Committee and the Estate as follows:

**Section 3.1    Organization.**

Funder is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and has all requisite power and authority to carry on its businesses as now being conducted, except where the failure to have such power or authority would not be reasonably expected to prevent or materially delay the consummation of the transactions contemplated hereby.

**Section 3.2    Authority.**

Funder has all necessary power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary action on the part of Funder and no other proceeding (including by its direct or indirect equityholders) on the part of Funder is necessary to authorize this Agreement or to consummate the transactions contemplated hereby. This Agreement has been duly and validly executed and delivered by Funder and constitutes a valid, legal and binding agreement of Funder, enforceable against Funder in accordance with its terms, except (i) to the extent that enforceability may be limited by applicable bankruptcy, insolvency, reorganization or other Laws affecting the enforcement of creditors' rights generally, and (ii) that the availability of equitable remedies, including specific performance, is subject to the discretion of the court before which any proceeding thereof may be brought.

**Section 3.3    Fully Informed.**

Funder has thoroughly reviewed all the information about the Claim provided to it by the Committee.

**Section 3.4    No Waiver of Privilege.**

(a) As of the date of this Agreement, neither Funder nor Funder's Counsel have disclosed any Common Interest Material to anyone without the prior written consent of the Committee.

(b) Neither Funder nor Funder's Counsel shall disclose any Common Interest Material to anyone without prior written consent of the Committee. For the avoidance of doubt, this prohibition prevents disclosure without prior written consent to Funder's investors and/or any party to whom Funder wishes to transfer part or all of its interest in the Claim. If consent is given, Funder shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Common Interest Material on terms no less restrictive than those set forth in this Agreement for Confidential Information. This provision shall survive the termination of this Agreement and remain in effect until the Conclusion of the Claim.

**Section 3.5    Secondary Market Financing.**

(a) Funder represents that as of the date of this Agreement it has not sold or entered negotiations to sell part or all of its interest in the Litigation Proceeds Rights to any Person.

5

(b) Funder will not securitize its interest in the Litigation Proceeds Rights, or make a partial assignment of such interest.

(c) Funder will not sell its interest in the Litigation Proceeds Rights without the consent of the Committee (such consent not to be unreasonably withheld).

**Section 3.6** **Brokers.** No broker, finder or investment banker is entitled to any brokerage, finder's or investment banker's fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by and on behalf of Funder or any of its Affiliates.

**Section 3.7** **Litigation.** Funder is not a party to any litigation or threatened litigation which would reasonably be expected to affect or prohibit the consummation of the transactions contemplated hereby.

**Section 3.8** **Sufficiency of Funds.** Funder has and will have at Closing sufficient cash on hand or other sources of immediately available funds to enable it to pay the Committed Capital and consummate the transactions contemplated by this Agreement.

**Section 3.9** **Acknowledgement by Funder; No Other Representations and Warranties.** Funder acknowledges and agrees that it has conducted its own independent review and analysis of the Claim. Except for the representations and warranties contained in this ARTICLE 3, neither Funder nor any other Person has made or makes any other express or implied representation or warranty, either written or oral, on behalf of Funder.

## ARTICLE 4
## COVENANTS

**Section 4.1** **No Commitment for Additional Funding.**

The Committee acknowledges and agrees that Funder has not made any representation, undertaking, commitment, or agreement to provide or assist the Committee or the Estate in obtaining any financing, investment, or other assistance, other than the Committed Capital as set forth herein. In addition, the Committee acknowledges and agrees that (i) no statements, whether written or oral, made by Funder or Funder's Counsel on or after the date of this Agreement shall create an obligation, commitment, or agreement to provide or assist the Committee or the Estate in obtaining any financing or investment; (ii) the Committee shall not rely on any such statement by Funder or Funder's Counsel; and (iii) an obligation, commitment, or agreement to provide or assist the Committee or the Estate in obtaining any financing or investment may only be created by a written agreement, signed by Funder and the Committee, setting forth the terms and conditions of such financing or investment and stating that the parties intend for such writing to be a binding obligation or agreement.

**Section 4.2** **Further Assurances.**

If any further action is necessary or desirable to carry out the purposes of this Agreement, each of the Parties will take such further action (including the execution and delivery of such further instruments and documents) as any other Party reasonably may request.

**Section 4.3    Duty to Inform.**

The Committee agrees and undertakes to keep Funder informed on a current basis about the progress of the Claim and the Other Assets. The Committee will promptly respond to requests of Funder and Funder's Counsel for documents and information relating to the Claim and Other Assets. The Committee will share with Funder and Funder's Counsel privileged information and documents to the extent that the provision of such privileged information and documents (i) does not waive any privileges maintained by the Committee, and (ii) conforms with the applicable Protective Orders.

**Section 4.4    Funder Participation.**

(a)    The Committee will immediately notify Funder upon receiving a settlement offer with respect to the Claim or the Other Assets and provide Funder with the complete details of such offer in such notice. The Committee will not respond to any such settlement offer until after giving good faith consideration to Funder's analysis of the offer, *provided, however,* that Funder must communicate its analysis (including any suggested counteroffers) within five (5) Business Days of receiving notice of such offer.

(b)    The Committee will not make a settlement offer with respect to the Claim or the Other Assets without first notifying Funder of the proposed offer, including its complete details, and giving good faith consideration to Funder's analysis, *provided, however,* that Funder must communicate its analysis within five (5) Business Days of receiving notice of such proposed offer, and *provided further, however*, that such notice period shall not apply to a counteroffer that is consistent with a suggested counteroffer received pursuant to subsection (a) above.

**Section 4.5    Common Interest and Confidentiality.**

(a)    The Committee and Funder agree that they share a common legal interest and, to the degree necessary to further their common legal interest, agree to share Common Interest Material as set forth herein. The Committee and Funder agree the material would not be shared if the common legal interest did not exist.

(b)    During the term of this Agreement and for two (2) years following its termination, the recipient of Confidential Information shall not disclose, use, or make available, directly or indirectly, any Confidential Information to anyone, except as needed to perform its obligations under this Agreement or as the disclosing Party otherwise authorizes in writing. When disclosing, using, or making Confidential Information available in connection with the performance of its obligations under this Agreement or as permitted by the disclosing Party, the recipient shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Confidential Information on terms no less restrictive than as set forth in this Agreement. The recipient agrees that neither the execution of this Agreement nor the provision of Confidential Information thereto enables the recipient to use the Confidential Information for any purpose or in any way other than as specified in this Agreement.

(c)    If a Party receives a potentially enforceable request for the production of Confidential Information, including without limitation a subpoena or other official process, that

7

Party will promptly notify the other Party in writing. If allowed, such notice shall be given before complying with the request and shall include a copy of the request. If the request is of the recipient of Confidential Information, the recipient shall make a good faith effort to obtain an agreement protecting the confidentiality of the Confidential Information prior to disclosing it. If a Party elects to contest the request, no Party shall make any disclosure until a final, non-appealable or non-stayed order has been entered compelling such disclosure.

(d) Funder agrees to protect documents and information subject to the Protective Orders in a manner consistent therewith.

### Section 4.6  Public Announcements.

No Party shall issue any press release or make any public announcement relating to the existence or subject matter of this Agreement without the prior written approval of the other Party, such approval not to be unreasonably withheld, conditioned or delayed, unless a press release or public announcement is required by applicable Law or an Order of the Bankruptcy Court. The Parties acknowledge that the Committee shall file this Agreement with the Bankruptcy Court in connection with obtaining the Litigation Funding Order and shall make any requisite disclosures regarding this Agreement to the Bankruptcy Court.

### Section 4.7  Reasonable Efforts; Further Assurances; Cooperation.

Subject to the other provisions hereof, each Party shall use its commercially reasonable efforts to perform its obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable Law to satisfy all conditions to its obligations hereunder and to cause the Closing to be effected as soon as practicable in accordance with the terms hereof, and shall cooperate fully with each other Party and its officers, directors, managers, employees, agents, counsel, accountants and other designees in connection with any step required to be taken as a part of its obligations hereunder. In the event any Legal Proceeding by any Governmental Entity or other Person is commenced that questions the validity or legality of the transactions contemplated hereby or seeks damages in connection therewith, the Parties shall (A) cooperate reasonably and use all commercially reasonable efforts to defend against such Legal Proceeding, (B) in the event an injunction or other Order is issued in any such Legal Proceeding, use commercially reasonable efforts to have such injunction or other Order lifted, and (C) cooperate reasonably regarding any other impediment to the consummation of the transactions contemplated hereby.

### Section 4.8  Expense Reimbursement.

The Parties do not intend to conduct an auction with respect to the sale of the Litigation Proceeds Rights but acknowledge that this Agreement is subject to Bankruptcy Court approval after notice to appropriate parties in interest and a hearing. In the event that the Closing fails to occur (i) due to the acceptance by the Estate of a competing bid for the Litigation Proceeds Rights and/or any other alternative source of capital for the uses specified in Section 2.2 hereof; or (ii) for any other reason other than a termination of this Agreement pursuant to Section 6.1(d), the Parties agree that Funder shall be entitled to the Funder Expense Reimbursement which shall be an allowed administrative expense claim against the Estate.

## ARTICLE 5
## CLOSING CONDITIONS

**Section 5.1    Conditions to Obligation of Funder.**

The obligation of Funder to consummate the transactions contemplated by this Agreement is subject to the fulfillment on or prior to the Closing of each of the following conditions, any one or more of which (to the extent permitted by applicable Law) may be waived by Funder:

(a)    The representations and warranties of the Committee of behalf of the Estate contained in this Agreement shall be true, correct and complete in all respects (other than de minimis failures of the such representations and warranties to be true, correct and complete), both as of the date of this Agreement and as of the Closing (other than the representations and warranties that are made as of a specified date, which representations and warranties shall be true, correct and complete in all respects (other than de minimis failures of such representations and warranties to be true, correct and complete) as of such date).

(b)    The Committee shall have performed or complied in all material respects with its obligations and covenants required by this Agreement to be performed or complied with by it at or prior to the Closing.

(c)    No temporary restraining Order, Law, preliminary or permanent injunction, cease and desist Order, or other Order issued by any Governmental Entity, shall be in effect prohibiting or preventing the transactions contemplated by this Agreement.

(d)    The Committee shall have delivered to Funder a certificate, dated as of the Closing Date and executed by a duly authorized member of the Committee, to the effect that the conditions set forth in Section 5.1(a) and Section 5.1(b) have been satisfied.

(e)    The Bankruptcy Court shall have entered the Litigation Funding Order on the docket in the Bankruptcy Case and such Order shall be a Final Order.

**Section 5.2    Conditions to Obligation of the Committee.**

The obligation of the Committee to consummate the transactions contemplated by this Agreement on behalf of the Estate is subject to the fulfillment on or prior to the Closing of each of the following conditions, any one or more of which (to the extent permitted by applicable Law) may be waived by the Committee:

(a)    The representations and warranties of Funder contained in this Agreement shall be true, correct and complete in all respects (disregarding all materiality and similar qualifications), both as of the date of this Agreement and as of the Closing (other than such representations and warranties that are made as of a specified date, which representations and warranties shall be true, correct and complete as of such date), except where the failure of such representations and warranties to be true, correct and complete would not have a material adverse effect on Funder's ability to consummate the transactions contemplated hereby.

9

(b) Funder shall have performed or complied in all material respects with its obligations and covenants required by this Agreement to be performed or complied with by Funder at or prior to the Closing.

(c) No temporary restraining Order, Law, preliminary, or permanent injunction, cease and desist Order or other order issued by any Governmental Entity shall be in effect prohibiting or preventing the transactions contemplated by this Agreement.

(d) Funder shall have delivered to the Committee a certificate, dated as of the Closing Date, executed by Funder to the effect that the conditions set forth in Section 5.2(a) and Section 5.2(b) have been satisfied.

(e) The Bankruptcy Court shall have entered the Litigation Funding Order on the docket in the Bankruptcy Case and such Order shall be a Final Order.

## ARTICLE 6
## TERMINATION

**Section 6.1** **Termination of Agreement.**

This Agreement may be terminated and the transactions contemplated hereby may be abandoned as provided below:

(a) Funder and the Committee may terminate this Agreement by mutual written consent at any time;

(b) Funder may terminate this Agreement by giving written notice to the Committee at any time upon the occurrence of the following events:

(i) a chapter 11 trustee or examiner with expanded powers is appointed in the Chapter 11 Case; or

(ii) the Chapter 11 Case is converted to a case under chapter 7 or is dismissed.

(c) Funder may terminate this Agreement (so long as Funder is not then in material breach of any of its representations, warranties, material covenants or material agreements contained in this Agreement) by giving written notice to the Committee at any time in the event that the Committee has breached any representation, warranty, covenant or agreement contained in this Agreement, which breach would cause the failure of any condition set forth in Section 5.1 to be satisfied and Funder shall have provided written notice of such breach to the Committee, and such breach, if curable, has continued without cure for a period of ten (10) days after receipt of such notice by the Committee.

(d) The Committee may terminate this Agreement (so long as the Committee is not then in material breach of any of its representations, warranties, material covenants or material agreements contained in this Agreement) by giving written notice to Funder at any time in the event Funder has breached any representation, warranty, covenant or agreement contained

10

in this Agreement which breach would cause the failure of any condition set forth in Section 5.2 to be satisfied and the Committee shall have provided written notice of such breach to Funder, and the breach, if curable, has continued without cure for a period of ten (10) days after receipt of such notice by Funder.

### Section 6.2    Effect of Termination.

If either Party terminates (or the Parties agree to terminate) this Agreement pursuant to Section 6.1, all rights and obligations of the Parties hereunder shall terminate without any Liability of either Party to the other Party except for the Liabilities of a Party then in material breach; *provided, however,* that in the event of a termination of this Agreement after the Effective Time, all liens and security interests conveyed to Funder pursuant to this Agreement and the Litigation Funding Order shall survive. Notwithstanding the foregoing, this Section 6.2, Section 4.6, Section 4.8, Section 6.3 and ARTICLE 7 shall survive any termination of this Agreement.

### Section 6.3    Disbursement of Litigation Proceeds Rights Upon Termination.

(a)    In the event of a termination of this Agreement after the Effective Time pursuant to Section 6.1(a), Section 6.1(b), or Section 6.1(c), in addition to all other rights available to Funder at law or in equity in the event of a breach of this Agreement, Funder shall be entitled to the immediate disbursement of all Litigation Proceeds Rights (including, for avoidance of doubt, all interest and other earnings accrued and earned thereon) and any portion of the Committed Capital (if any) that has not previously been disbursed by the Committee or the Estate.

(b)    In the event of a termination of this Agreement after the Effective Time pursuant to Section 6.1(d), the Committee on behalf of the Estate shall be entitled to the immediate disbursement of all Litigation Proceeds Rights (including, for the avoidance of doubt, all interest and other earnings accrued and earned thereon), *provided, however,* that neither the Committee nor the Estate shall have any further recourse against Funder, and Funder shall have no additional liability to the Committee or the Estate, beyond the disbursement of such funds.

## ARTICLE 7
## MISCELLANEOUS

### Section 7.1    Definitions.

(a)    For purposes of this Agreement, the terms set forth below have the following meanings:

"Affiliate" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities or otherwise.

"Award" means the total monetary value to the Estate on account of or as a direct or indirect result of the Claim or the Other Assets, whether by negotiation, arbitration, mediation,

...

lawsuit, judgment, settlement, or otherwise. For the avoidance of doubt, "Award" includes cash and the monetary value of non-cash assets at the time the Award is paid, the monetary value to the Estate of the avoidance or subordination of any lien on Estate property, and the monetary value of any Other Assets made available to the Estate as a direct or indirect result of the Claim.

"Business Day" means any day of the year on which national banking institutions in New York, NY are open to the public for conducting business and are not required or authorized to close.

"Claim Defendants" means IDB, Bank Leumi USA, Bank Hapoalim B.M. and Capital One, N.A.

"Committee Counsel" means Perkins Coie LLP.

"Common Interest Material" means any discussion, evaluation, negotiation, and any other communication and exchanges of information relating to the Claim or the Other Assets in any way, whether written or oral, between or among the Committee, Committee Counsel, Funder, and/or Funder's Counsel, *provided, however*, that such communication would be protected by attorney–client privilege between the Committee and Committee Counsel, work-product doctrine, or other discovery protection if not disclosed to a third party lacking a common legal interest.

"Conclusion of the Claim" means the later of the final resolution of (i) the Claim, or (ii) the Other Assets, whether by settlement, the entry of a non-appealable final judgment against the Estate, or the enforcement of a final, non-appealable judgment in favor of the Estate.

"Confidential Information" means

    (i) the Common Interest Material;

    (ii) discussions and negotiations related to this Agreement, including drafts of this Agreement; and

    (iii) to the extent not already covered as Common Interest Material, the Claim, including: (a) the information, of any type, relevant to understanding the Claim; (b) the Parties', Committee Counsel's, or Funder's Counsel's strategies, tactics, analyses, or expectations regarding the Claim or Award; and (c) any professional work product relating to the Claim or the Award, whether prepared for the Committee, Committee Counsel, Funder, or Funder's Counsel.

Notwithstanding the foregoing, information is not Confidential Information that (a) was or becomes generally available to the public other than by breach of this Agreement; (b) was, as documented by the written records of the receiving Party, known by the receiving Party at the time of disclosure to it or was developed by the receiving Party or its representatives without using Confidential Information or information derived from it; (c) was disclosed to the receiving Party in good faith by a third party who has an independent right to such subject matter and information; or (d) is required to be disclosed by Law; *provided, however*, that nothing in the

definition of "Confidential Information" is intended to alter or amend the protections provided by the applicable Protective Orders.

"Final Order" means an Order or judgment of the Bankruptcy Court, as entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the Order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

"Funder's Counsel" means Kelley Drye & Warren LLP.

"Funder Expense Reimbursement" means the amount of the reasonable and documented expenses of Funder, including, but not limited to, the fees and expenses of Funder's Counsel, incurred in connection with the negotiation of this Agreement, up to an aggregate amount of $100,000.

"Governmental Entity" means any court or tribunal or administrative, governmental or regulatory body or agency.

"IDB" means Israel Discount Bank of New York.

"Law" means any federal, state, local or foreign law (including common law), statute, code, ordinance, rule, regulation or other requirement or rule of law of any Governmental Entity.

"Legal Proceeding" means any judicial, administrative or arbitral actions, suits, proceedings (public or private), claims, hearings, investigations, charges, complaints, demands or governmental proceedings.

"Litigation Funding Order" means an order of the Bankruptcy Court, satisfactory in form and substance to each of the Committee and Funder, among other things (a) approving this Agreement and the execution, delivery, and performance by the Committee of this Agreement on behalf of the Estate and the other instruments and agreements contemplated hereby, (b) granting senior, first priority security interests in and against the Claim, the Proceeds and the Litigation Proceeds Rights in favor of Funder, whether such property is in the accounts as of the Effective Time or is after-acquired, (c) authorizing and directing the Committee to make payment to Funder in accordance with this Agreement on account of Litigation Proceeds Rights within two (2) Business Days of the receipt by the Estate, or by the Committee on behalf of the Estate, of Proceeds on account of the Claim or any Other Assets pursuant to any Award, and (d) providing that the Closing will occur in accordance with the terms and conditions hereof.

"Litigation Proceeds Rights" means the right of Funder to receive: (a) the first $1,500,000 in Proceeds received by the Estate, or by the Committee on behalf of the Estate on account of any Award; and (b) 50% of the Proceeds of any Award received by the Estate, or by

the Committee on behalf of the Estate, in excess of $1,500,000, up to an additional amount payable to Funder of (i) $3,000,000, if paid in full at any time prior to the earlier of December 31, 2016 and the commencement of a trial on the Claim in the Bankruptcy Court, and (ii) $4,500,000, if paid in full at any time on or subsequent to the earlier of December 31, 2016 and the commencement of a trial on the Claim in the Bankruptcy Court.

"Liability" means any liability, obligation or commitment of any nature whatsoever (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due, or otherwise), including any liability for taxes and any accounts payable.

"Order" means any order, injunction, judgment, decree, ruling, writ, assessment or arbitration award.

"Other Assets" means (i) to the extent not subject to the liens of any Claim Defendant for any reason whatsoever, including, but not limited to, as a result of the equitable subordination of any claim held by any Claim Defendant against the Debtor or its Estate, all claims and causes of action of the Estate including, without limitation, those arising out of the facts and circumstances as more fully set forth in that certain *Motion of the Committee of Unsecured Creditors for the Approval of a Settlement Agreement with EisnerAmper LLP Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Sections 105(a), 363 and 541 of the Bankruptcy Code* [Docket No. 842] and any exhibits thereto, filed in the Bankruptcy Case; and (ii) the rights of the Estate to any Unencumbered Assets.

"Person" means an individual, partnership, corporation, limited liability company, joint stock company, unincorporated organization or association, trust, joint venture, association or other organization, whether or not a legal entity, or a Governmental Entity.

"Proceeds" means any and all value received to satisfy an Award.

"Protective Orders" means the Stipulated Protective Orders entered as Docket Nos. 332 and 496 in the Chapter 11 Case, including all supplements and amendments thereto.

"Subsidiary" means, with respect to any Person, any entity of which securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other Persons performing similar functions are at any time directly or indirectly owned by such Person.

"Unencumbered Assets" means any and all property and assets of the Debtor or its Estate determined to be not subject to the liens of any Claim Defendant for any reason whatsoever, including, but not limited to, as a result of the equitable subordination of any claim held by any Claim Defendant against the Debtor or its Estate. Assets and property of the Debtor or its Estate become unencumbered upon either (i) the determination as such by the Bankruptcy Court or other court of competent jurisdiction or (ii) full execution of a stipulation or other binding agreement between the Debtor or its Estate and the Claim Defendants to the extent that Bankruptcy Court approval is not required.

(b)     Each of the following terms is defined in the Section set forth opposite such term:

| Term | Section |
| --- | --- |
| Agreement | Preamble |
| Auction | Section 4.8(b) |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Chapter 11 Case | Recitals |
| Claim | Recitals |
| Closing | Section 1.4 |
| Closing Date | Section 1.4 |
| Committed Capital | Section 1.2 |
| Committee | Preamble |
| Debtor | Recitals |
| Effective Time | Section 1.4 |
| Estate | Recitals |
| Funder | Preamble |
| Minimum Overbid Amount | Section 4.8(b) |
| Non-Party Affiliate | Section 7.14 |
| Party | Preamble |
| Successors | Section 7.5 |

**Section 7.2**   **Expenses.**

Except as expressly set forth in this Agreement, all fees and expenses incurred in connection with this Agreement and the transactions contemplated by this Agreement, including the fees and disbursements of counsel, financial advisors and accountants, shall be paid by the Party incurring such fees or expenses.

**Section 7.3**   **Entire Agreement; Amendment; Waiver; Assignment.**

This Agreement (a) constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof, (b) can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by Funder, in the case of an amendment, supplement, modification or waiver sought to be enforced against Funder, or the Committee, in the case of an amendment, supplement, modification or waiver sought to be enforced against the Committee or the Estate; and (c) shall not be assigned by any Party (whether by operation of Law or otherwise) without the prior written consent of the other Parties.

**Section 7.4** **Notices.**

All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be given by personal delivery, nationally recognized overnight courier, certified mail or facsimile at the following addresses (or to such other address as a Party may have specified by notice given to the other Party pursuant to this provision):

<u>To Funder:</u>

Robert K. Minkoff
Cedar Glade Capital, LLC
767 Fifth Avenue, 19th Floor
New York, NY 10153
Email: rminkoff@cedargladecapital.com

<u>with a copy (which shall not constitute notice to Funder) to</u>:

Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Attention: James S. Carr, Esq.
Email: jcarr@kelleydrye.com

<u>To the Committee:</u>

Perkins Coie LLP
30 Rockefeller Plaza
22nd Floor
New York, New York 10112-0085
Attention: Schuyler G. Carroll, Esq.
Email: SCarroll@perkinscoie.com

Any such notice or communication shall be deemed to have been received (i) when delivered, if personally delivered, (ii) on the next Business Day after dispatch, if sent postage pre-paid by nationally recognized, overnight courier guaranteeing next Business Day delivery, (iii) on the 5th Business Day following the date on which the piece of mail containing such communication is posted, if sent by certified mail, postage prepaid, return receipt requested, and (iv) on confirmation of receipt when transmitted via facsimile; <u>provided</u>, that if confirmation of receipt is not received on a Business Day or is received after 5:00 p.m. New York, New York time on a Business Day, such notice or communication shall be deemed to have been received the following Business Day.

**Section 7.5** **Successors and Assigns.**

The rights, benefits, and obligations of the Parties under this Agreement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, permitted assigns, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Party including, without limitation, any trustee appointed in the Chapter

11 Case or upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and any post-confirmation trustee, plan administrator or other post-confirmation representative of the Estate that is a successor in interest to the Committee and appointed pursuant to a confirmed plan of reorganization or liquidation in the Chapter 11 Case, as applicable (each, a "Successor" and collectively, "Successors").

### Section 7.6    Governing Law; Jurisdiction.

This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York (without giving effect to the principles of conflict of Laws thereof), except to the extent that the Laws of such state are superseded by the Bankruptcy Code. Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Parties agree that if any dispute arises out of or in connection with this Agreement or any of the documents executed hereunder or in connection herewith, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all disputes relating to the transactions contemplated hereby and any of the documents executed hereunder or in connection herewith. Such court shall have sole jurisdiction over such matters and the Parties affected thereby and Funder and the Committee on behalf of the Estate each hereby consent and submit to such jurisdiction; provided, however, that if the Chapter 11 Case shall have closed and cannot be reopened, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York and any appellate court thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 7.4, unless another address has been designated by such Party in a notice given to the other Parties in accordance with the provisions of Section 7.4.

### Section 7.7    Exhibits; Construction; Interpretation.

When a reference is made in this Agreement to an article, section, paragraph, or clause, such reference shall be deemed to be to this Agreement unless otherwise indicated. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of names and pronouns shall include the plural and vice versa. As used in this Agreement: (a) the terms "hereof," "herein," and "herewith" and words of similar import will, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement, (b) the word "if" and other words of similar import shall be deemed, in each case, to be followed by the phrase "and only if", (c) any

reference herein to "Dollars" or "$" shall mean United States dollars, (d) the use of "or" herein is not intended to be exclusive (i.e., "or" shall mean and/or unless the context otherwise requires), (e) references herein to a Person are also to its successors and permitted assigns, and any reference herein to a Governmental Entity shall be deemed to include reference to any successor thereto, and (f) whenever the phrase "ordinary course of business" is used in this Agreement without being followed by the words "consistent with past practice", it will be deemed to be followed by such words.

### Section 7.8     Parties in Interest.

This Agreement shall be binding upon and inure solely to the benefit of each Party and its Successors, and nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person any rights, benefits or remedies of any nature whatsoever under or by reason of this Agreement other than as expressly set forth herein.

### Section 7.9     Severability.

If any term or other provision of this Agreement is invalid, illegal or unenforceable, all other provisions of this Agreement shall remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party.

### Section 7.10    Counterparts.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile, portable document format or other electronic means shall be effective as delivery of a manually executed counterpart to this Agreement.

### Section 7.11   Waiver of Jury Trial.

EACH OF THE PARTIES HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (I) ARISING UNDER THIS AGREEMENT OR (II) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES IN RESPECT OF THIS AGREEMENT OR ANY OF THE TRANSACTIONS RELATED HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER IN CONTRACT, TORT, EQUITY, OR OTHERWISE. EACH OF THE PARTIES EACH HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT ANY OF THE PARTIES MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

**Section 7.12** **Survival.**

The representations and warranties, covenants, and other agreements contained in this Agreement of each of the Committee on behalf of the Estate and Funder contained in this Agreement shall survive the Closing, and each such surviving representation, warranty, covenant or agreement shall survive the Closing for the period contemplated by its terms (or if no such survival period is contemplated, then indefinitely).

**Section 7.13** **Time of Essence.**

With regard to all dates and time periods set forth or referred to in this Agreement, time is of the essence.

**Section 7.14** **Non-Recourse.**

All claims or causes of action (whether in contract or in tort, in law or in equity, by statute or otherwise) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution or performance of this Agreement (including any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement), may be made only against the Persons that are expressly identified as parties hereto and thereto. No Person who is not a named party to this Agreement, including any individual member of the Committee and any past, present or future director, officer, employee, incorporator, member, partner, stockholder, equityholder, controlling person, Affiliate, agent, attorney or representative of any named party to this Agreement (the "Non-Party Affiliates") shall have any liability (whether in contract or in tort, in law or in equity, by statute or otherwise, or based upon any theory that seeks to impose liability of an entity party against its owners or Affiliates, including by or through theories of equity, agency, control, instrumentality, single business enterprise, piercing the veil or undercapitalization) for any obligations or liabilities arising under, in connection with or related to this Agreement or for any claim based on, in respect of, or by reason of this Agreement or the negotiation or execution hereof or thereof; and each Party waives and releases all such liabilities, claims and obligations against any such Non-Party Affiliates. Notwithstanding anything to the contrary herein, Funder's recourse to assets to enforce this Agreement shall be limited to the Litigation Proceeds Rights and shall not include the liability of any Person in addition to, or beyond, such Litigation Proceeds Rights. Accordingly, Funder shall not have an administrative claim under Sec. 503 of the Bankruptcy Code against the general assets of the Debtor beyond those assets that are included as Litigation Proceeds Rights.

**Section 7.15** **Bankruptcy Court Approval.**

The Parties acknowledge that this Agreement shall not become effective until it has been approved by the Bankruptcy Court pursuant to the Litigation Funding Order.

* * * * *

IN WITNESS WHEREOF, each of the Parties has caused this Litigation Funding Agreement to be duly executed on its behalf as of the day and year first above written.

CEDAR GLADE CAPITAL, LLC

By: _____
Name: Robert Minloff
Title: President


OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF OAK ROCK FINANCIAL LLC,
on behalf of the Chapter 11 Bankruptcy Estate of
Oak Rock Financial LLC

By: _____
Name: Schuyler Carroll
Title: Counsel